Tracey v. State.

C. W. TRACEY v. STATE OF NEBRASKA.

FILED NOVEMBER 8, 1895.   No. 6928.

| 46 | 361 |
| 52 | 431 |
| 53 | 341 |
| 54 | 619 |
| 46 | 361 |
| 62 | 179 |

1. Criminal Law: MOTION FOR NEW TRIAL: MISCONDUCT OF JURY: EVIDENCE: REVIEW.  A defendant convicted of a felony, in support of his motion for a new trial, filed an affidavit alleging misconduct of the jury while deliberating.  The statements of the affidavit were not corroborated, and it did not appear by what means the affiant obtained possession of the facts alleged to constitute the misconduct.  The averments of the affidavit were not denied by the state.  *Held*, (1) That the trial court was not

obliged to take the statements of the affidavit as true; (2) that whether there had been misconduct of the jury was a question of fact for the district judge; (3) that in trying such issue the district judge had a right to weigh and consider, as against the statements in the impeaching affidavit, the presumption of law that the jurors had obeyed their oaths.

2. ———: SENTENCE: QUESTIONING CONVICT. A district court, when called upon to pronounce judgment against a person convicted of a felony, is not limited to the sole question whether the person so convicted has anything to say why judgment should not be pronounced against him.

3. ———: ———: ———. The district court in such a case has no authority to coerce an answer from a prisoner to any question whatever; but what inquiries the court shall make of such a prisoner, aside from the inquiries provided by statute, or whether any, is a matter resting entirely in its discretion.

4. Robbery: SENTENCE. The obvious intent of the statute in fixing the punishment for the crime of robbery at imprisonment from three to fifteen years was to invest the trial court with discretion to grade the punishment, within the limits of the statute, according to the enormity of the offense; to take into consideration in fixing the punishment all the circumstances in evidence under which the crime was committed; perhaps to consider the age, the mental condition, and the previous good character of the person convicted.

5. ———: EVIDENCE. In a prosecution for robbery everything said and done by the prosecuting witness and the prisoner at the time of the felonious assault is competent evidence as being a part of that transaction.

6. ———: INFORMATION: ALLEGATION AS TO CHARACTER OF MONEY. An information for robbery charged the prisoner with having robbed the prosecuting witness of $14.50, "good and lawful money of the United States." Held, That the averment as to the character of the money was surplusage and need not be proved in order to sustain the conviction. (Criminal Code, sec. 420.)

7. Modification of Instructions. It is error for the district court to modify an instruction requested, by interlineation or erasure, and thus give such an instruction. (Compiled Statutes, ch. 19, sec. 53.)

8. Review. To secure the reversal of a judgment in an error proceeding to this court it is not enough to establish that the dis-

Tracey v. State.

trict court erred, but it must appear from the record that such error may have caused or contributed to the judgment under review and thus have prejudiced the complaining party.

ERROR to the district court for Lancaster county. Tried below before STRODE, J.

The facts are stated by the commissioner.

*Walter A. Leese*, for plaintiff in error:

A juror during deliberation upon the verdict made statements of facts in the case within his own personal knowledge. These statements were prejudicial to plaintiff in error and are grounds of reversal. (*Richards v. State*, 36 Neb., 18; *Wood River Bank v. Dodge*, 36 Neb., 708; *Anshicks v. State*, 6 Tex. App., 524; *Wharton v. State*, 45 Tex., 2; *Winslow v. Morrill*, 68 Me., 362; *Morton v. State*, 1 B. J. Lea [Tenn.], 498; *Boody v. State*, 4 Yerg. [Tenn.], 111; *Wade v. Ordway*, 57 Tenn., 229.)

The information alleges the robbery of fourteen dollars and fifty cents "in good and lawful money of the United States." Torn bills are not admissible to prove this allegation. (*Taylor v. State*, 29 N. E. Rep. [Ind.], 415; *Coffelt v. State*, 11 S. W. Rep. [Tex.], 639.)

The court erred in giving an instruction modified by interlineations. (Consolidated Statutes, sec. 1072.)

The court, in defining the crime of robbery, should have instructed on the crime of larceny, and larceny from the person. Where the court undertakes to define the elements of the crime it should define the lesser offenses included in the crime. (*Stevens v. State*, 19 Neb., 647; *Brown v. State*, 33 Neb., 354, 34 Neb., 448.)

*C. W. Starling*, also for plaintiff in error.

*A. S. Churchill, Attorney General,* and *George A. Day, Deputy Attorney General,* for the state.

RAGAN, C.

In the district court of Lancaster county C. W. Tracey was convicted of the crime of robbery and sentenced to the state penitentiary for seven years. He brings the judg-ment of the district court here for review and assigns as a reason for its reversal the following alleged errors:

1. In support of his motion for a new trial Tracey filed in the district court an affidavit alleging that while the jury that convicted him was deliberating upon its verdict one of the jurors stated to his fellows that he was person-ally acquainted with a witness who had testified on the trial in behalf of the prisoner; that this witness was an unchaste woman, unworthy of belief, and that her testi-mony could not be relied upon; that another juror, while the jury was deliberating upon its verdict, stated to his fellows that he also was personally acquainted with said witness; that he knew her when she was a respectable woman; that he now knew her to be unchaste and un-worthy of belief. The witness referred to testified on the trial in behalf of the prisoner and her evidence tended to establish an *alibi* in his favor. The reputation of this wit-ness for veracity was not assailed on the trial. The state-ments made by the prisoner in his affidavit were not denied by the state at the hearing of the motion for a new trial, and it is to be observed that the prisoner does not state in his affidavit by what means he became possessed of what he alleges occurred in the jury room while the jury was delib-erating. The argument is now made that since the testi-mony of the said witness was material, and if believed by the jury, established the innocence of the prisoner of the crime for which he was tried, and since the reputation of said witness for veracity was not assailed on the trial and the truth of the statements made by the prisoner in his affi-davit was not denied by the state, that the district court was compelled to take the statements made in such affida-

vit as true, and that such statements show such misconduct on the part of the jury as to vitiate the verdict, and that the district court erred in not so holding; but we are of opinion that the trial judge was not compelled to take the statements made in the prisoner's affidavit as true. The district court, in trying the issues presented by the motion for a new trial, had the right, if it was not obliged, to indulge the presumption that the jurors had been mindful of the oaths which they took, and had found the verdict which they had solely upon the evidence introduced on the trial of the case. What were the issues presented? Whether the juror had been guilty of such misconduct as to vitiate the verdict. This was a question of fact to be determined by the trial court from the competent evidence before it bearing on the subject. The law supplied, by presumption, the evidence on the one hand that the jurors had obeyed their oaths. This evidence, this presumption, the district court weighed and considered; on the other hand it weighed and considered the statements made by the prisoner in his affidavit impeaching the verdict; and after weighing this presumption in support of the verdict and the affidavit of the prisoner against the verdict it reached the conclusion that the evidence did not support the assault made upon the verdict. We think that the evidence before the district judge justified the conclusion reached. We agree with the supreme court of South Carolina in *State v. Duestoe*, 1 Bay, 377, where it is said there is no rule of law which requires a trial judge to believe affidavits filed impeaching a verdict, even though such affidavits are not contradicted, since the jurors themselves are under oath to well and truly try, etc. The evidence for and against impeaching a verdict in such a case is the oaths of the jurors upon the one side, coupled with the presumption that they have obeyed such oaths, and the statements in the impeaching affidavits upon the other side.

2. When Tracey was arraigned for sentence in the dis-

trict court he was asked by the trial judge how many terms
he had already served in the state penitentiary, and he an-
swered "two." The record does not disclose that Tracey
made any objection whatever to answering this question.
So far as the record shows, the question was promptly and
voluntarily answered. It is now insisted that the district
court had no authority of law for making such inquiry;
that the only object which the trial judge could have had
in making the inquiry was to increase the punishment of
the prisoner for the crime of which he stood convicted if
it should turn out that the prisoner had previously been in
the penitentiary. Section 495 of the Criminal Code pro-
vides: "Before the sentence is pronounced, the defendant
must be informed by the court of the verdict of the jury,
and asked whether he has anything to say why judgment
should not be pronounced against him." We do not think
that a district court, when called upon to pronounce judg-
ment against a person convicted of a felony, is limited to
the sole question whether the person so convicted has any-
thing to say why judgment should not be pronounced
against him. This provision is for the benefit of the pris-
oner, is mandatory in his behalf, and if not complied with
is ground for setting aside the judgment pronounced.
(*Dodge v. People*, 4 Neb., 222.) We do not decide that
the court has any authority to coerce an answer from a
prisoner arraigned for a sentence to any question whatever,
but what inquiries a court may make of such a prisoner,
aside from the inquiry provided by the statute, or whether
any, is a matter resting entirely in the discretion of the
court. We do not know what the object of the trial judge
was in inquiring of the plaintiff in error as to his having
previously been in the penitentiary, nor are we obliged in
this case to determine whether the court may take into
consideration information so obtained from the prisoner in
fixing his punishment for the crime of which he stands
convicted. The law fixes the punishment for the crime of

Tracey v. State.

robbery, of which the plaintiff in error was convicted, at imprisonment in the penitentiary for not less than three and not more than fifteen years. In this case, as already stated, the plaintiff in error was sentenced to the state penitentiary for seven years. If the district judge in fixing this punishment took into consideration that the plaintiff had previously been twice in the penitentiary, such fact does not appear in the record. The obvious intent of the statute in fixing the punishment for the crime of robbery at imprisonment from three to fifteen years was to invest the trial court with discretion to grade the punishment—within the limits of the statute—according to the enormity of the offense; to take into consideration in fixing the punishment all the circumstances in evidence under which the crime was committed; perhaps to consider the age, the mental condition and the previous good character of the person convicted. True the district court may determine what penalty shall be imposed solely from the evidence produced before the jury on the trial, but we do not think that the court is confined to that evidence alone in fixing the punishment. When the prisoner is inquired of by the court whether he has anything to say why judgment should not be pronounced against him he may make such statements of his previous good behavior, of his previous good character, of his age, of his condition at the time he committed the offense, and the influences which were brought to bear upon him and led to his commission of the crime as may induce the court " to temper justice with mercy" and to give the prisoner the least punishment provided for by the statute; and we cannot say that such action on his part would be an abuse of his discretion.

3. On the trial the state introduced evidence which tended to show that on the night of the 14th of April, 1893, one Osterlow was in the city of Lincoln intoxicated and drinking intoxicants; that about midnight Osterlow got into a hack at a hotel for the purpose of driving to his

home.   The plaintiff in error, who was a hack driver, and two other hack drivers were also in or on the hack.   They drove the hack in which Osterlow was to the outskirts of the city near a park where there were few people living. There they stopped the hack, jerked Osterlow out, knocked him down, demanded his money, and one of the three put his hand in Osterlow's pocket and took therefrom silver amounting to about three dollars.   In the scuffle Osterlow held in his hand two five-dollar bills, and one of the parties in attempting to take these bills from Osterlow's hand tore them in two.   The three parties then drove away, leaving Osterlow on the ground and in possession of the torn five-dollar bills, or the two pieces of said bills.   On the trial the state offered in evidence these two parts of said two five-dollar bills which had been retained by Osterlow. To this evidence the plaintiff in error objected, on the ground that the indictment charged the plaintiff with robbing Osterlow of $14.50, "of good and lawful money of the United States;" that the torn bills offered in evidence had not been proven to be good and lawful money of the United States, and it had not been shown that they had any value.   The objection was overruled, the torn bills admitted in evidence, and this ruling of the district court is now assigned as error.   Conceding that these torn bills had not been shown to be good and lawful money of the United States, and had not been shown to have any value, we still think that the court did not err in permitting the torn bills to be introduced in evidence.   These bills tended to corroborate the evidence of Osterlow as to the felonious assault made upon him by the plaintiff in error and the others with intent to rob him.   These torn bills were the results of what occurred at the time the assault with intent to rob was made, and for that reason alone, if for no other, they were admissible in evidence.   Everything said and done at the time of the felonious assault was competent evidence as being a part of that transaction.

4. The plaintiff in error requested the court to charge the jury as follows: "If you find from the evidence that no money was taken from the person or custody of the prosecuting witness, Osterlow, at the time of the alleged robbery, then the defendant is not guilty of the crime charged in the information, and it is your duty to return a verdict accordingly. In considering whether or not any money was so taken, it is the duty of the state to prove beyond a reasonable doubt that some money *other than the torn bills* was so taken, or to prove that the defendant took, or assisted in taking, such *torn bills, and that the parts of such torn bills thus taken were redeemable at their former full value.*" The refusal of the district court to give this instruction is the next error assigned here. The instruction was requested upon the theory that as the plaintiff in error was charged in the information with having robbed Osterlow of $14.50, of good and lawful money of the United States, it was incumbent upon the state to prove beyond a reasonable doubt that whatever money was taken from Osterlow by the plaintiff in error, or his accomplices, was in fact good and lawful money of the United States. Section 420 of the Criminal Code provides: "In every indictment in which it shall be necessary to make any averment as to any money, or bank bill, or notes, United States treasury notes, postal and fractional currency, or other bills, bonds, or notes, issued by lawful authority and intended to pass and circulate as money, it shall be sufficient to describe such money or bills, notes, currency, or bonds, simply as money, without specifying any particular coin, note, bill or bond; and such allegation shall be sustained by proof of any amount of coin or of any such note bill, currency, or bond, although the particular species of coin of which such amount was composed, or the particular nature of such note, bill, currency, or bond shall not be proved." In view of this provision of the Criminal Code we think that the expression in the information, "good and lawful

money of the United States," was surplusage, and that the
state, in order to convict, was not bound to prove that the
money of which Osterlow was robbed was good and law-
ful money of the United States. We are aware that a con-
trary conclusion was reached in *Taylor v. State*, 29 N. E.
Rep. [Ind.], 415, in which state there is a statute almost
identical with ours quoted above. We do not know how
the supreme court of Indiana reached the conclusion it did
in view of the statute. With all due deference to that
court we feel bound to follow the express provision of our
statute rather than the decision. In *Coffelt v. State*, 11 S.
W. Rep. [Tex.], 639, it was held, where an indictment for
robbery alleged that the money taken was "good and law-
ful money of the United States," that in order to convict
the state was compelled to prove that the money was of the
character alleged in the information. In the absence of a
statutory provision, such as ours, we have no doubt but
that is correct. The court did not err in refusing to give
this instruction.

5. The court modified the instruction quoted above, re-
quested by the plaintiff in error, by drawing a line with
a pen through the words in italics in said instruction,
and as thus modified gave the instruction. The action
of the court in giving the instruction as thus modified
by interlineation and erasure is another of the errors as-
signed here by the plaintiff in error. Section 53, chapter
19, Compiled Statutes, provides: "If the court refuse a
written instruction as demanded, but give the same with
a modification, which the court may do, such modification,
shall not be by interlineation or erasure, but shall be well
defined and shall follow some such characterizing words, as
'changed thus,' which words shall themselves indicate that
the same was refused as demanded." There can be no
doubt but that the district judge—doubtless unwittingly—
disregarded this plain provision of the statute in giving to
the jury this instruction erased and interlined as it was;

Tracey v. State.

but the instruction was not excepted to on that account, and the instruction as originally drawn, we have seen, was one to which the plaintiff in error was not entitled and the instruction as given by the court correctly stated the law. The assignment must therefore be overruled. To secure the reversal of a judgment of a district court it is not enough, in an error proceeding, to establish the fact that the court erred, but it must appear from the record that there was an exception to the act and that such error may have prejudiced the party complaining of it. In other words, it must appear that the error of the court may have caused or contributed to the judgment complained of.

6. Another error assigned is that the verdict of the jury is not supported by sufficient evidence. Without summarizing it here we have not the slightest doubt but that it is. If all consideration of the evidence relating to the two five-dollar bills which Osterlow claims he had in his possession at the time he was assaulted by the plaintiff in error and his accomplices be disregarded, there is sufficient evidence remaining in the record to show that the plaintiff in error and his accomplices, at the time they assaulted Osterlow, robbed him of three dollars of silver.

Counsel for the plaintiff in error also indulges in criticisms upon certain other instructions given by the trial court. We have carefully examined all these instructions and find no criticism which we think merits our further attention. The judgment of the district court is in all things.

AFFIRMED.