(No. 20711.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN POPESCUE *et al.* Plaintiffs in Error.

*Opinion filed June 18, 1931—Rehearing denied October 9, 1931.*

BENJAMIN C. BACHRACH, (WILBERT F. CROWLEY, and WENDELL E. GREEN, of counsel,) for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, and JOHN A. SWANSON, State's Attorney, (EDWARD E. WILSON, GRENVILLE BEARDSLEY, and J. J. NEIGER, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

John Popescue and Charles Rocco (herein called defendants) were indicted in the criminal court of Cook county for the murder of Courtney Merrill. When arraigned, both defendants, in the presence of their counsel, entered pleas of guilty. They were each advised by the court of the legal consequences of their pleas, and after thus being admonished they each persisted in their pleas of guilty and such pleas were received and recorded. The trial judge then proceeded to examine witnesses as to the aggravation or mitigation of the offense as required by law (Smith's Stat. 1929, chap. 38, par. 732, p. 1065,) and thereafter sentenced each of the defendants to death by electrocution. Motions for a new trial, in arrest of judgment, to vacate the sentences and for leave to withdraw the pleas of guilty were all argued and denied, and the record was brought here for review by writ of error.

The error principally argued and relied upon by defendants for reversal is that the trial judge, after the pleas of guilty and before pronouncing sentence, heard the defendants themselves admit that they had committed another murder three hours before the crime charged in the indictment. It is urged that the hearing of this testimony was prejudicial to the defendants and beyond the scope of the court's authority under the statute.

The evidence heard by the trial judge after the pleas of guilty were entered consisted in part of the voluntary written confessions of the defendants, made and signed Octo-

ber 31, 1930. These confessions were admitted in evidence by stipulation and read to the court without objection.

John Popescue in his confession, among other things, stated: "Rose and I rented one light housekeeping room at 2911 East Ninety-first street about a week ago. Charles Rocco, Rose and I sleep in that room. On October 28, about 7:35 P. M., Charles Rocco and I were back of the Union Bank of South Chicago. Charles Rocco and I talked about where we were going to pick up a car; get somebody in a car by himself, tie him up and use his car with him in the back of it. We dressed up, and he took the gun and I took the knife and blackjack out of the dresser drawer. We got that other blackjack and the other gun out of places on the Dunes highway that was raided to-night. * * * Rocco said, 'When the first one comes along with one person in it and stops we will nail him.' * * * We seen a car drive up with one fellow in it and turn in the alley. We went right in after it. * * * At that time I had the dagger and the billie and Rocco had the 45 Colt revolver. I went up there as soon as he got out of the car. Charles was on the other side of the car. I told the man to get back in the car. * * * When I told the man to get back in the machine he mumbled something and jumped at me. I was standing with the knife in the side, and when he jumped he just shoved himself up against it and started hitting me with both hands. I never saw Courtney Merrill prior to the 28th. At the time the dagger was in his side the handle was in my left hand. * * * He did not have anything in either of his hands. He started running up Houston avenue and hollered 'Help!' at least once. Rocco was on the other side of the car and came over to my side when the man got away from me. Rocco had the 45 Colt revolver in his hand. After I started running, Rocco fired a shot. We ran west in the alley. * * * We went up-stairs to our room. I wiped the knife off. There was blood on it. I must have cut Mr. Courtney with it.

I wiped it on a handkerchief out of my pocket in the presence of Rocco and Rose. Charles said, 'You got some blood on there.' I said, 'I know it,' and wiped it off. I think Charlie said something about 'they won't even hold up their hands any more.' * * * The dagger is Charlie Rocco's. He bought it a week or two ago for a little under two dollars. Rose was with him at the time. She asked him why he bought it. He said something about he got something now he could use without making any noise. * * * We were going to use Merrill's car, tie him up and put him in the back. We had a clothes line cut in two pieces to tie his hands and feet. We had a place picked out to hold up that night. * * * It was understood that after we got through the job we would bring Merrill back here—leave him in the car on some side street. We contemplated another job that night with that automobile— a barbecue stand on the Dunes highway. Rocco and I talked about it. The gun was loaded and Rocco had another round in his pocket. They were 45-caliber bullets."

Charles Rocco's confession in part is as follows: "I live at 2911 East Ninety-first, where I was arrested with John Popescue and Rose. John and Rose rented the room. I paid for it. The three of us occupied it. On October 28, 1930, after supper, about a quarter after five, I left the room and took with me my 45 Army Colt and three pieces of rope. I used my own rope last night in tying a cab driver on the highway in Indiana. * * * After leaving the room we walked around, talking. I says, 'It is about time you got down to business and get a car pretty short and shooting into Gary.' * * * Another man pulled into the alley at the garage next to the bank. I asked John if he wanted to make it, and he said 'O.K.,' and he run down to it and I covered the right side while he was covering the left, and John and the owner of the car were in a tangle. When John first approached he said to the man, 'Stick 'em up!' The man just started hollering 'Help!' I saw the

tangle when it was all over—when the man got away and started running to Houston. I told John to go ahead and beat it, and I stood around, fired a shot alongside of the bank, and it kept the crowd of three or four people across the street from coming into the alley. * * * At the time of the tangle I had this 45 Colt automatic in my hip. I drawed it after the man got away from John. It was loaded to the gills. I got this gun out of a booze joint—Sam's place, on a dirt road about fifteen miles from Michigan City—a little more than six weeks ago, in a stick-up. Buster and Speck were with me, and besides the revolver I got about $75 and three pints of Old Log Cabin booze. Those bullets on the table were taken from me. I turned over eight 45-bullets to the police. Six were taken from the gun. The gun was in my hip when I was arrested in my house at 2911, pretty close to midnight. After Popescue and I left the scene of the stabbing we zigzagged. We went west in one alley, then north to our right in another alley, then west in the next alley to Commercial avenue. * * * We both stayed at home that night. We slept it off. Yesterday we left the room about noontime and started hiking into Whiting. I thought I shot Merrill."

Rose Mankowski, otherwise known as Rose Miller, testified, without objection, for the People, in part as follows: "On October 28, 1930, Charles Rocco and John Popescue were in the house at supper time. I ate with them. They left together about 6:30 in the evening. Before they left they planned to go out and raid some place. Rocco said they would go out and get a car in town that evening and go out to Gary, and they were going to walk up to some man that was all alone and put him in the back seat and take him and his car with them. Popescue said, 'All right; we will.' Rocco took a 45-gun from the drawer and put it inside his trousers, at the belt. Rocco took a rope. John took a stiletto and blackjack. * * * About eight o'clock, when they came back, they didn't come back as usual—they

came up the other steps. * * * I saw Popescue wipe the stiletto on the sanitary pad, and then Charlie walked over to Johnny and said, 'Oh, you did, didn't you?' and he said, 'Yes, I had to; I could not help it; he came up towards me.' I saw the revolver. Rocco carved a mark on the gun." She was asked, "What did he say, if anything, at that time?" and answered, "Well, he says, 'That is two, now.' And he said—" At this point objection was made for the first time and witness was taken from the court room and an argument ensued. Upon conclusion of the argument counsel for defendants suggested to the court that it was bad practice to permit such evidence "even on a plea of guilty; however, after your honor hears it you can order it stricken, if you see fit." No further examination of the witness on this point was attempted.

John Popescue, in addition to his confession, testified in his own behalf. He was interrogated in chief by his counsel, Crowley. In his oral testimony he repeated substantially all that he had stated in his written confession. After he had again detailed the facts relating to this murder he testified, while he was still on the stand in his own behalf, as follows: "I was arrested between eleven and twelve by Anderson and other officers. They took from me this pearl-handled revolver, this pearl-handled knife and the small blackjack. I was taken to the police station and made a statement to the police officers. I heard the statement read. It was true at the time I made it. I understand fully that I am pleading guilty to the charge of murder." On cross-examination he testified among other things: "I did not intend to stab Mr. Merrill. I carried the dagger for a weapon. My original intention was to put him in the back of the car and take him as a prisoner. We were going on Dunes highway. There was a barbecue stand we intended to rob. I only wanted Mr. Merrill's car. I had no intention of wounding or maiming him. I am positive of that. At 4:30 that afternoon I was at home, at 2911.

I don't remember if I was in Indiana any time that afternoon." He was asked, "Do you remember talking to me about Indiana any time that afternoon?" This question was objected to by counsel for defendants, who said: "On a plea of guilty in a case of this character there is no intent to be proven. There is no contention that it is not murder. The mere fact that he went out with a weapon and that murder resulted from the robbery clearly shows the fact that these boys are guilty of murder without the necessity of proving guilt." The court said, "Except that the court should be advised if there are any mitigating circumstances. Objection overruled." Thereupon Popescue continued testifying: "That same afternoon I was in the vicinity of Fir and Michigan street, in Indiana Harbor. Rocco was with me. We started to get a car from a fellow that was parking it there on the street. Charles got in the right side of the car and was sitting next to him with the gun up against him. I was just getting inside the car on the other side and he started to holler. I said, 'You better beat it.' I started running. Charles fired a shot with the 45-gun. I was going down the alley. It was late in the afternoon. Of my own knowledge I don't know that that man died. I don't know that a warrant charging murder has issued out of East Chicago. I got this gun on Dunes highway at a barbecue stand two days after the Merrill episode, in a stick-up."

Charles Rocco also testified in his own behalf and on his oral examination practically substantiated all that is contained in his written confession. After detailing incidents connected with the murder of Merrill, Rocco told about his arrest and continued as follows, still on direct examination: "I was taken to the police station and made the statement I heard read. The statement is the truth and I gave it freely." On cross-examination he testified with reference to the Indiana matter, without objection, as follows: "On October 28, at 4:10 P.M., I was in Indiana

Harbor with Popescue, holding up a car, during which a man got shot. He says, 'You can't kill me.' He started to holler. I says, 'Don't holler or I will let you have it.' I had the gun in both hands. He grabbed the gun and tried to pull it out of my hands. I let loose of it a little bit and it went right in his stomach. When the shot was fired the gun was right into him. I told the man, 'Let go or I will give it to you.' I did give it to him. The 45 is the gun. I was with Popescue when Merrill was killed. After I got home I put one mark on the gun. There was one on it. * * * I figured the bullet glanced off the bank and struck Mr. Merrill."

As no denial of guilt was made by the defendants the only question is whether the trial judge erred in hearing evidence of other crimes before exercising his statutory discretion in fixing the degree of punishment. In other words, after a jury trial is waived by a plea of guilty duly received and the trial judge proceeds under the statute to examine witnesses as to the aggravation and mitigation of the offense, do the same strict rules of evidence apply as in jury trials, where the guilt or innocence of the accused is also to be decided and where evidence relating only to the crime charged is generally admissible? Such a question has not heretofore been definitely passed upon by this court.

In approaching the issue involved the distinction between the respective duties of the court and jury must be constantly borne in mind. In this State the jury in a homicide case not only have to determine the guilt or innocence of the defendant, but where they find him guilty must also fix the punishment. This double duty of determining both guilt and penalty distinguishes the function of the jury from that of the court, where on a plea of guilty all questions of guilt or innocence are disposed of and the only remaining duty is to determine what penalty to impose. Under general rules repeatedly re-affirmed by this court, evidence of separate crimes cannot be admitted in support of another

and distinct offense. There are certain well known exceptions to this rule which will be discussed later in this opinion, but such separate crimes are admissible only to show guilt where guilt or innocence is an issue and for no other purpose. These familiar doctrines of the law need no citations to sustain them. They apply without question to trials by jury of homicide cases in this State and to all like cases where a defendant pleads not guilty and is tried by the court without a jury. Such rules are founded in justice, so that the guilt or innocence of a defendant shall be determined by evidence relating only to the crime with which he is charged. Even if it were proper for a jury to hear evidence of other crimes before fixing the punishment in homicide cases, where three sentences are discretionary, (death, life imprisonment or any term not less than fourteen years,) yet such evidence would be manifestly improper, because it might tend to influence their decision on the all-important first question to be determined—*i. e.*, is the defendant innocent or guilty? Where a jury hears the evidence they must at the same time and from the same evidence determine not only guilt or innocence, but in the same verdict, if guilt is found, they must also fix the punishment. Once the question of innocence or guilt is decided by a plea of guilty then no such compelling reason exists for barring evidence of former crimes from the trial judge, who then has the heavy and sole responsibility of examining witnesses as to the aggravation or mitigation of the offense and of pronouncing judgment.

What we have said above with reference to the double duty of juries in homicide cases under pleas of not guilty as contrasted with the single duty of judges under pleas of guilty is intended to answer the argument of counsel for defendants that because evidence of a separate crime is not admissible before a jury it should likewise be inadmissible before a judge. All of the cases cited by defendants to support this contention under the first three divisions of

their brief were jury trials, in each of which the first question to be decided was whether the defendant was innocent or guilty of the crime charged. The cases cited are therefore beside the point at issue here, where a jury trial was waived, guilt admitted, and only the degree of punishment remained to be determined by the trial judge.

Even if it be held that in a trial before a jury it is improper to receive evidence of other offenses than that charged in the indictment, "it is otherwise when, after a verdict of guilty, the court is called upon to sentence. In such case the court may of its own motion take notice of a prior conviction of the defendant on its own records, or will hear proof of his character and antecedents, either to aggravate or extenuate his guilt." (3 Wharton's Crim. Proc.—10th ed.—sec. 1890, p. 320, and many cases cited.) In *People* v. *Pennington*, 267 Ill. 45, this court said: "That part of section 4 of division 13 of the Criminal Code making it the duty of the court to examine witnesses as to the aggravation and mitigation of the offense in cases where the party pleads guilty is mandatory, and it is necessary for the court to make such examination when requested or desired either on the part of the People or of the defendant. This is a privilege which may be waived by the parties and some other method of supplying the court with the necessary information be substituted in its stead." To the same effect this court has recently held that on a plea of guilty it was proper and sufficient, after one witness testified, for the court to ascertain upon its own motion all further facts that appeared necessary for it to know, by information given by the State's attorney and by the attorney for the defendant. *People* v. *Gerke,* 332 Ill. 583; *People* v. *Crooks,* 326 id. 266.

The above authorities make it clear that on a plea of guilty the remaining "duty of the court to examine witnesses as to the aggravation and mitigation of the offense" is not a trial in the ordinary sense of the word. The lan-

guage used in the act makes it obvious that a trial was not intended, for the judge is only required to examine witnesses for the purpose of determining, not guilt or innocence but the degree of punishment which his judgment should express. Under a similar statute in California, which provided "the court shall proceed by examination of witnesses to determine the degree of crime and give sentence accordingly," it was held the proceeding "is not a trial. The statute does not prescribe any form in which the determination of the degree of guilt shall be expressed. Any decision or judgment which shows the conclusion derived from the examination would be a compliance with the statute." (*People* v. *Noll,* 20 Cal. 164.) In passing upon requirements of a similar statute in Iowa directing the court to "proceed by the examination of witnesses to determine the degree of the crime and award of sentence accordingly," it was held that if the trial court complied with the law and examined witnesses it was not necessary that the evidence heard, nor the fact that it had made such determination be made a matter of record. (*State* v. *Cumberland,* 90 Iowa, 525, 58 N. W. 885.) Without citing further authorities, it must be apparent that where a defendant waives a jury trial and pleads guilty and asks for no trial, no issue remains and there is nothing to try. The right to a jury is waived, and with it, of course, the constitutional guaranties with respect to the conduct of criminal trials. A plea of guilty waives any defect not jurisdictional. 16 Corpus Juris, sec. 738, p. 404; *McCarty* v. *Hopkins,* 61 Neb. 550, 85 N. W. 540; *Casper* v. *State,* 27 Ohio St. 572.

It is as much for the protection of the accused as it is for the People that after the question of guilt has been admitted by a plea or reached by verdict the judge should know something of the life, family, occupation and record of the person about to be sentenced. One of the most natural and common inquiries is whether the guilty person has ever been previously convicted of the same or similar

offense. Courts are usually more lenient in pronouncing sentence upon first offenders. If the judge in making this inquiry has learned of some previous crime which the defendant admits he has committed, can it for that reason be said that the sentence imposed upon the guilty person was due to prejudice and should be set aside? Surely a provision of the law which often results in mercy and leniency toward a first offender cannot be the cause of error in every case where the trial judge, in making this inquiry, finds that the defendant has committed other crimes of similar character. Such a construction would mean that hardened criminals and so-called "repeaters" could hide behind their crime records, and that a judge, before pronouncing sentence upon them, would be powerless to inquire into their past records.

In many decisions of other jurisdictions it has been held that where the court has discretion in fixing the punishment it may consider the moral character of the accused, and such other evidence as it may deem necessary, as a guide in determining the punishment to be imposed, (16 Corpus Juris, sec. 3065, p. 1297; *State* v. *Wilson,* 121 N. C. 650; *State* v. *Wise,* 32 Ore. 280; *State* v. *Burton,* 27 Wash. 528; *State* v. *Reeder,* 79 S. C. 139;) and in considering evidence in aggravation or mitigation of the offense the court may consider many matters "not admissible on the issue of guilt or innocence." (*Toomer* v. *State,* 112 Md. 285.) In this connection it has been held that the court may receive the unsworn statement of the witness where it is received solely for the purpose of determining what sentence ought to be imposed, (*People* v. *Mausi,* 113 N. Y. Sup. 866,) and the lack of procedural formality is shown where the admission of affidavits on behalf of the prosecution to show aggravation was held not to be a violation of defendant's right to be confronted by witnesses. *State* v. *Reeder, supra; King* v. *Withers,* 3 Tr. 428, 100 Eng. Rep. 657.

The Supreme Court of Nebraska had a similar question before it in the case of *Tracy* v. *State,* 46 Neb. 361, 64 N. W. 1069, where it was insisted that the trial judge had no authority to ask the defendant how many terms he had already served in the State penitentiary, and that the effect of making the inquiry was to increase the punishment of the prisoner for the crime for which he stood convicted. In that case the court said: "The obvious intent of the statute in fixing the punishment for the crime of robbery at imprisonment from three to fifteen years was to invest the trial court with discretion to grade the punishment, within the limits of the statute, according to the enormity of the offense, * * * perhaps to consider the age, the mental condition and the previous good character of the person convicted. True, the district court may determine what penalty should be imposed solely in the evidence produced before the jury on the trial, but we do not think that the court is confined to that evidence alone in fixing the punishment."

In *State* v. *Burton, supra,* the trial court had imposed a sentence of thirteen years where the maximum sentence for burglary was fourteen years, and it was objected that the court had violated constitutional provisions in fixing so severe a sentence. The Supreme Court of Washington there said: "While to this court the penalty of thirteen years seems to be a severe one, yet there is some indication in the record that this was not the first offense committed by this defendant. We are not cognizant of all the information surrounding the case which may have been in possession of the trial judge and are not prepared to say that the discretion which is given him by the law was abused."

In the case of *State* v. *Wise, supra,* where at the time sentence was passed upon the defendant there was pending against him an indictment for the crime of concealing the death of a child and the trial judge certified that in passing sentence he took into consideration such indictment

in aggravation of the punishment imposed, it was held that such would not constitute reversible error. The court there said: "The extent of the punishment, within the limits of the statute, was within the discretion of the trial judge, and the fact that he may have considered in aggravation thereof other charges against the defendant does not invalidate the sentence.—1 Bish. New Cr. Law, sec. 948."

In *Myers* v. *People*, 177 Pac. 145, the Supreme Court of Colorado sustained a conviction where the trial judge, in fixing a sentence for larceny, considered evidence tending to show that the accused had stolen other bicycles. In that case the trial judge in passing sentence remarked: "In view of the circumstances in this case and the number of bicycles that you have taken from different people in the city and county of Denver * * * this is a very light sentence." In sustaining the judgment the Supreme Court of Colorado said: "There is nothing in the record showing an abuse of discretion in fixing the punishment, and even if the court in the exercise of its discretion took into consideration the evidence which tended to show that this was not the defendant's only offense, this would not render the judgment illegal. (16 Corpus Juris, 1363, sec. 3210.) * * * Such circumstances surrounding the defendant, if within the knowledge of the court in any way, may properly be taken into consideration in the exercise of discretion, within the statute, in determining the measure of punishment that should be imposed."

In the case at bar the written order of the judge sentencing the two defendants to die in the electric chair made no reference to any crime other than the crime charged against them in the present case. The order therefore fails to show that the judge abused his discretion in any regard. In such case the presumption of regularity must obtain. Even if it should be assumed that the evidence of the murder committed by these defendants three hours before they murdered Merrill was incompetent, this was a hearing be-

fore the court without a jury, and the court is supposed, as in chancery cases, to disregard all evidence heard except that which is competent and relevant to the issue. (*Mix* v. *People,* 116 Ill. 265; *Gordon* v. *Reynolds,* 114 id. 118; *Coffey* v. *Coffey,* 179 id. 283.) Certainly no good reason can be assigned why a judge, often sitting as chancellor in chancery cases, should part of the time be said to possess legal discernment enough to sift out the competent and disregard the incompetent evidence but when determining the degree of punishment in a criminal matter not be able to exercise the same ability.

Even aside from the question of the right of the court to hear evidence of former crimes in fixing the punishment, the evidence of other crimes heard in the present case was relevant and offers no ground for reversal. In presenting their pleas of guilty the defendants did not deny killing Merrill but claimed it was a mistake or an accident and that Merrill had thrown himself upon the dagger, which caused his death. Without considering the unlikelihood of the deceased running into the dagger so as to produce two separate wounds upon his body, it is sufficient to observe that the theory of the defense was to secure leniency by claiming that the killing was accidental. The methods used in this former murder were the same, except that a gun was used instead of a knife. In both cases the defendants had conspired together in the common purpose of securing an automobile with which to commit a robbery and in both cases they carried rope with which to tie their victims. When two murders are committed by the same defendants under similar circumstances, for the same purpose and within three hours of each other on the same day, and the defendants, while pleading guilty to the second murder, claim the killing was accidental, it is not error for the court to hear evidence of the first crime where the parties are the same and the facts and circumstances so closely interwoven with a common design. Such evidence is properly admit-

ted to show whether the second killing was an accident or part of a studied conspiracy of holding up and robbing people and killing when resisted. Evidence of similar acts committed by the accused, happening at or about the same time, is relevant and competent to show intent. (*People* v. *Folignos,* 322 Ill. 304; *People* v. *Hobbs,* 297 id. 399.) That such evidence proves or tends to prove an offense other than the one with which the accused is charged is never a valid objection to its admissibility. (*People* v. *Spaulding,* 309 Ill. 292.) Proof of offenses similar to the one charged and for which the accused is being tried is not admissible to prove that he committed the act charged but may be considered by the jury in determining the intent with which the act charged was done, where the jury are satisfied by other evidence that the accused is guilty. (*People* v. *Hobbs, supra; People* v. *Folignos, supra.*) Guilt cannot be established by showing that the defendant has committed other crimes, but evidence of other crimes may be admitted when it tends to establish a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. (*People* v. *Cione,* 293 Ill. 321; *People* v. *Watkins,* 309 id. 318.) In those cases where guilty knowledge or intent is an essential element of the crime charged it is competent to prove other similar offenses tending to show such guilty knowledge for the purpose of showing the same or to prove the act charged was not accidental or a mistake. (*People* v. *Heffernan,* 312 Ill. 66; *People* v. *Rogers,* 324 id. 224.) Among the well known exceptions to the general rule that evidence of separate and individual crimes is inadmissible to prove the guilt of a person on trial for a criminal offense are those involving evidence to rebut a defense of alibi—*People* v. *Mandrell,* 306 Ill. 413; to prove motive—*Farris* v. *People,* 129 Ill. 521, and to prove that the act was not accidental or a mistake—*People* v. *Heffernan, supra;* 1 Jones on Evidence, sec. 145, pp. 736, 737. In the present case the con-

fessions and testimony of the defendants contained assertions in mitigation of the offense and a claim that the killing of Merrill was accidental. It is clear that the evidence of the former crime, admitted by both defendants to have been committed under similar circumstances on the same day, was properly heard by the trial judge in aggravation of the offense and in rebuttal of the claim that the killing was accidental.

Counsel for defendants cite the cases of *People* v. *Stamatides,* 297 Ill. 582, and *Marx* v. *People,* 204 id. 248, in support of the proposition that since under a plea of guilty there is no necessity to prove guilt and as proof of a separate crime is admissible only to prove the crime charged, therefore proof of a separate crime was not properly admitted in this case. The hypothesis stated has no application here for the reasons previously given, since this was not a jury trial nor a trial of any kind but was simply a statutory hearing, by which the court examined witnesses to determine whether any facts existed to aggravate or mitigate the punishment which the self-confessed criminals should receive.

In their brief the defendants attribute much importance to the decisions of this court in the cases of *People* v. *Lane,* 300 Ill. 422, *People* v. *Meisner,* 311 id. 40, and *People* v. *King,* 276 id. 138. Those cases all lay down the general rule mentioned in the earlier part of this opinion, that the evidence on a trial must be confined to the question in issue without regard to other crimes committed. As previously stated, the doctrine announced in those cases is still the correct rule of law in this State, and nothing in this opinion is intended to change the general rules of evidence in that regard. However, the distinction between those three cases and the case at bar must be clearly apparent. All three were jury trials, where the defendants were entitled to have the question of their guilt or innocence fairly determined by the same evidence that would be used by the

jury in fixing their punishment. In those cases there were no pleas of guilty, no defenses offered which brought the proof of other crimes within any of the exceptions to the rule, and no proof that the other crimes were closely related in point of time and method of execution. The guilt of the defendants is admitted and not in question in the present case. Only the character or degree of punishment was to be determined after the plea of guilty was received and entered. It is not contended that the defendants were not represented by able counsel or that the court did not give to them the fullest measure of their constitutional rights and privileges. It is not urged that the defendants are not guilty or that their voluntary written confessions—the highest order of proof known to the law—are not true in every particular. These confessions alone were amply sufficient to sustain the death penalty. Both of the confessions related the details of other crimes committed by the defendants, in the course of which robbery was committed, a car stolen and the driver tied and robbed. No evidence of mitigating circumstances is shown by the record, but, on the contrary, the confessions alone indicate that the defendants were both guilty of a deliberate murder committed pursuant to a conspiracy to hold up and rob. After a careful examination of all of the points raised we are satisfied that no injustice has been done to the defendants by the judgment of the trial court.

The judgment of the criminal court is therefore affirmed, and the clerk of this court is directed to enter an order fixing October 16, 1931, as the date on which the original sentence entered in the criminal court of Cook county shall be executed. A certified copy of this order shall be furnished by the clerk of this court to the sheriff of Cook county.

*Judgment affirmed.*