40 N.J. Super. 40 (1956)
122 A.2d 189
STATE OF NEW JERSEY, PLAINTIFF,
v.
HARRY JOSEPH ROSE, DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided March 22, 1956.
*42 Mr. Charles V. Webb, Jr., Prosecutor (Mr. Myron W. Kronisch appearing), attorney for the County of Essex.
Mr. Joseph Butt, attorney for Harry Joseph Rose.
WAUGH, J.C.C.
The petitioner, Harry Joseph Rose, was granted a writ of habeas corpus dated December 20, 1955. In order to acquire an understanding of the present action it is necessary to examine and study other pertinent previous legal proceedings involving this petitioner.
Harry Joseph Rose was indicted by the Essex County grand jury on the following three indictments, among others:
No. 1024, Term of 1949. A five-count indictment as follows:

Count 1, Breaking and entering by night, with intent to steal, at the store building of the A & P Food Stores in Newark, on September 21, 1949.

Count 2, Same as Count 1 except that the breaking and entering was done by day.

Count 3, Entering the same store on the same date as charged in Count 1.

Count 4, Larceny of cigarettes valued at $523.60.

Count 5, Knowingly receiving the goods described in Count 4.
No. 1025, Term of 1949. A two-count indictment as follows:

Count 1, Larceny of goods and chattels of the value of $383 on September 16, 1949, in Newark.

Count 2, Knowingly receiving the goods and chattels described in Count 1.
No. 1026, Term of 1949. A one-count indictment as follows:
That the defendant did on September 24, 1949, by night, willfully attempt to break and enter a store building in Montclair, New Jersey, with intent to steal.
*43 On each of the above indictments, the petitioner, on March 6, 1950, entered a plea of not guilty, and on March 23, 1950 retracted such pleas of not guilty and entered pleas of non vult. On April 26, 1950 he was sentenced on each of the three indictments.
Thereafter, the petitioner made application to Judge Hutchinson. This application was denied as having been filed prematurely (D-1 in evidence, May 1955 proceeding).
On March 25, 1955 petitioner filed his verified petition for correction of illegal sentence. This court held a hearing thereon, treating the application as if a writ of habeas corpus had been granted, and made findings on the following grounds alleged by petitioner:
1. That his confession was forced from him by reason of fear of what would happen to his fiancee who was apparently apprehended by the Montclair police along with the petitioner;
2. That the sentences were not imposed to run consecutively and therefore must run concurrently;
3. That his counsel misstated in open court that he had been convicted of rape while in the service and had been sentenced to a long term of imprisonment, whereas in truth, the charge of rape was withdrawn by the young lady who made it and that counsel's misstatement, in effect, prejudiced the sentencing judge;
4. That his motion for an adjournment of sentence in order to give him an opportunity to retract his plea of non vult was denied.
All the above allegations were disposed of adversely to the petitioner and his application for a rehearing was denied.
Thereafter, petitioner served upon the State a notice of appeal to the Appellate Division and a copy of a "Brief For Appellant In Support Of Petition On Leave To Appeal" (S-2 in evidence). This appeal was thereafter abandoned.
On October 26, 1955, through present counsel, petitioner filed a complaint for a writ of habeas corpus. This the court construed to be an application for rehearing of the previous application to correct an illegal sentence, and because there appeared to be no new grounds, the court denied the application.
Upon request of counsel, the court heard oral argument on the application for the writ. At that argument, the *44 court's attention was called to a certification (later P-1 in evidence in this hearing). That certification raised new matters not theretofore considered and the court thereupon granted the writ of habeas corpus. State v. Fontano, 26 N.J. Super. 166 (App. Div. 1953), affirmed 14 N.J. 173 (1953).
The hearing on the new writ was limited to the new issues raised in the certification and the question of the failure to have adequate representation by competent counsel. The question of adequacy of counsel led to a hearing on a variety of issues that included, among others, the legality of the non vult pleas to the indictments, and the plea for leniency. On all matters the petitioner was given wide latitude in his proof. The limitation was based on authority of In re Sabongy, 18 N.J. Super. 334 (Cty. Ct. 1952), and United States ex rel. McCann v. Thompson, 144 F.2d 604, 156 A.L.R. 240 (2 Cir. 1944). See also State v. Fontano, supra, wherein at page 170, of 26 N.J. Super., Judge Jayne stated:
"We do not intend to imply that in the consideration of the subsequent petition the judge should entirely ignore the allegations of the applicant's former petition or petitions and the decision or decisions rendered in those proceedings. While the prior determinations are not to be recognized as conclusive, due recognition and regard should be accorded to the previous factual findings."
And on pages 171 to 172:
"We express the opinion that in the consideration of such an application the judge may properly examine the former petition, ascertain the facts therein alleged, the adequacy of the hearing and the scope of the prior factual findings, and where it is apparent that the grounds for relief are substantially identical with those alleged in the former petition concerning which the petitioner was afforded a full hearing and that there appears to have been no material change in circumstances, the judge may in the exercise of sound discretion ascribe influential, but not necessarily controlling, weight to the findings in the prior proceeding."
This is a rule of reason. A prisoner should have the right to successive writs under proper circumstances. However, *45 in hearings upon successive writs, policemen, court reporters, court clerks and other public officials should not be called from their important duties to testify about matters already fully explored or to put into evidence and testify as to documents already considered by the court.
As will be shown by the record, the petitioner then filed an affidavit on February 15, 1956 in which he sought to disqualify this court. In this connection correspondence passed between the court and the petitioner (C-1 in evidence).
The court determined as a matter of law that the proceedings on the writ were civil in nature. In re Kershner, 9 N.J. 471, 474 (1952), and that N.J.S. 2A:15-49 et seq. applied. The court then heard the motion for disqualification and refused to grant the same. See Clawans v. Waugh, 10 N.J. Super. 605 (Cty. Dist. Ct. 1950).
Turning now to the merits of the present hearing. The court will dispose of the questions raised by petitioner, keeping in mind that the "burden of proving his charges [rests] affirmatively upon the defendant who obtained the writ." State v. Cynkowski, 10 N.J. 571 (1952). The issues raised by petitioner are as follows:
1. That pleas of non vult to a five-count indictment (No. 1024) and a two-count indictment (No. 1025) were invalid and sentences imposed thereon cannot stand.
Counsel for the petitioner cites as authority therefor State v. Shelbrick, 33 N.J. Super. 7, at page 10 (App. Div. 1954):
"There is no doubt that a person cannot be guilty of larceny and receiving of the same property. 45 Am. Jur., Receiving Stolen Property, §§ 4, 10. The two offenses may be asserted in separate counts of an indictment (State v. Friedman, 98 N.J.L. 577 (E. & A. 1922)), even though convictions on both counts would be repugnant. State v. Verona, 93 N.J.L. 389 (E. & A. 1919); 45 Am. Jur., Receiving Stolen Property, §§ 2, 13. But where the two offenses are joined and there is a jury question as to whether the defendant is the thief or the receiver, the proper practice is for the court to charge the jury that they should specify the particular offense if a verdict of guilt is found. State v. Dunlap, 103 N.J.L. *46 209, 211 (Sup. Ct. 1927). If there is no jury question as to one or the other of the counts, presumably that matter will be taken care of by appropriate motion of defense counsel. However, in the absence of such a charge or a request therefor, a general verdict of guilty without specification of counts would not be disturbed so long as there was evidence to support the conviction on one of the counts. State v. Verona, supra; State v. Huggins, 84 N.J.L. 254 (E. & A. 1913)."
The above italicized portion was not included in defense counsel's brief. As set forth above, the quotation from the Shelbrick case is the complete answer to the question here involved.
A plea to such an indictment is valid. State v. Friedman, 98 N.J.L. 577 (E. & A. 1922). A plea of guilty or non vult is equivalent to a conviction after trial on the merits. State v. Compton, 28 N.J. Super. 45 (App. Div. 1953). In the Friedman case, at page 577, the court stated:
"The next point is that the verdict of guilty of larceny and receiving is void for repugnancy. We think not. An indictment joining counts for larceny and receiving is not improper pleading. State v. Braunstein, 84 N.J.L. 765. A valid judgment can be entered upon a general verdict of guilty on such an indictment (State v. Dugan, 65 N.J.L. 65), and in such case the proper practice is to sentence on the count for the highest crime. (State v. Verona, 93 N.J.L. 389.) That appears to have been the course pursued in the present case."
Now, as to the next issue raised by the petitioner, which is as follows:
2. That the record (P-1 in evidence) certified to by the county clerk on September 7, 1954, is binding upon the court, or at least presents a hopeless confusion as to what actually was the sentence in the case.
This certification, after setting forth the three indictments, No. 1024, No. 1025 and No. 1026, shows the following sentences:
No. 1024: "The Court ordered and adjudged that the said defendant, Harry Joseph Rose, be imprisoned in the State Prison of *47 this State for a minimum term of four (4) years, and for a maximum term of seven (7) years, at hard labor upon this conviction, without costs."
No. 1025: "The Court ordered and adjudged that the said defendant, Harry Joseph Rose, be imprisoned in the State Prison of this State for a minimum term of four (4) years, and for a maximum term of seven (7) years, at hard labor upon this conviction, without costs.
This sentence to commence on and after the expiration of a previous sentence imposed upon this defendant on conviction No. 1024."
No. 1026: "The Court ordered and adjudged that the said defendant, Harry Joseph Rose, be imprisoned in the State Prison of this State for a minimum term of four (4) years, and for a maximum term of seven (7) years, at hard labor upon this conviction, without costs.
This sentence to commence on and after the expiration of a previous sentence imposed upon this defendant on conviction No. 1024."
(Emphasis supplied by the court)
It is to be noted that on indictment No. 1026 the sentence, as it is set forth in the certification, was four to seven years and was to commence on and after the expiration of a previous sentence imposed upon this petitioner on conviction No. 1024. There appear to be two errors in the certification. First, that the term imposed is incorrectly set forth as four to seven years, and second, that the commencement date is based on the wrong conviction.
The court had before it S-6 in evidence, the mimeographed list used in court by Mr. James Fox, the court clerk of the sentencing judge. This list shows the sentences as follows:

 Indictment No. 1024  minimum of 4 and for a maximum term of
 7 years State's Prison
 Indictment No. 1025  minimum of 4 and for a maximum term of
 7 years State's Prison consecutive to 1024.
 Indictment No. 1026  minimum of 2 and for a maximum term of 3
 years State's Prison consecutive to 1025.
 (Emphasis supplied by the court)

The official minutes of the court (S-7 in evidence), also made by the clerk, have entries similar to those in S-6. The judgment sheets required by R.R. 3:7-10(d), signed by the *48 sentencing judge (S-8, S-9 and S-10 in evidence), all showed the sentences similar to those set forth in S-6 and S-7.
P-1 in evidence was copied from Exhibit S-11 (a, b, c, d) in evidence. S-11, the criminal docket record, was prepared from S-6 and S-7. In other words, the court minutes were copied into S-11 by a clerical assistant.
This court concludes that the certification (P-1 in evidence), is erroneous. It appears that the scrivener, in copying, copied the sentence imposed under Indictment No. 1025 twice, labeling correctly No. 1025 first and then erroneously setting forth the very same sentence under Indictment No. 1026.
The record (S-11 in evidence) which was corrected after certification, should not have been corrected without court order. The correction was not properly or completely made.
R.R. 4:62-1 provides for the correction of clerical mistakes by the court in civil cases. It is even more important that corrections of clerical mistakes in criminal matters be made by court order. See R.R. 3:11-9.
However, I am satisfied from the judgment records and from the official minutes that the sentences imposed by Judge Naughright were as follows:

 1024  4 to 7 years, State Prison
 1025  4 to 7 years, State Prison, consecutive to 1024
 1026  2 to 3 years, State Prison, consecutive to 1025.

and that the petitioner's substantive rights were in no way impaired by the clerk's error made in transposing the same.
In the previous hearing held in this matter, the court had the advantage of the testimony of the sentencing judge's court reporter, Mr. George Flammer, who read the judge's sentence from his shorthand notes. That testimony showed that the judge stated orally that the sentences were consecutive, and that pronouncement is controlling. In re De Luccia, 10 N.J. Super. 374, 381 (Cty. Ct. 1950).
*49 Next, we consider the third issue raised by the petitioner, as follows:
3. That the petitioner was not represented by counsel at the time of his pleas on the indictments, on March 23, 1950, and that, consequently, the pleas of non vult were not understandingly made.
This point was argued by counsel in summation because the transcript does not carry the name of petitioner's attorney under appearances (S-3 in evidence). This contention is without merit.
The petitioner in his testimony admits the presence of his attorney at the time of the pleas. The attorney, Mr. Santa Maria, testified he was present. The various papers filed by petitioner admit the presence of the attorney at the pleading.
This court finds that the petitioner and his attorney were present before the court on March 23, 1950 and that the petitioner's pleas of non vult to each of the three indictments were understandingly and voluntarily given. See State v. Piracci, 14 N.J. Super. 319 (App. Div. 1951).
Regarding petitioner's claim as to the time when Mr. Santa Maria was discharged as his counsel, this court finds as a fact that Mr. Santa Maria was not discharged prior to or on April 26, 1950, the date of sentence. The petitioner did request Mr. Santa Maria to obtain an adjournment of sentencing, and such an attempt was made unsuccessfully by both Mr. Santa Maria and by the petitioner himself. It is obvious that the adjournment was sought by reason of further pending charges against the petitioner. This is borne out by the testimony of Mr. Samuel Bozza, petitioner's second attorney, Mr. Santa Maria and the petitioner himself.
It is evident that petitioner contemplated terminating the service of Mr. Santa Maria. However, that he did not do so is evidenced by correspondence between the two (S-4 and S-5 in evidence).
The last three grounds urged by petitioner will be disposed of together. They are, namely, that Mr. Santa Maria's plea for leniency made in the absence of petitioner, and the *50 failure of petitioner to have counsel at the actual sentencing violated the requirement of fair play and constituted a denial of due process of law; and, finally, that counsel was not competent, loyal, able or interested.
The court finds as a fact that the now deceased county judge who sentenced the defendant did, upon occasion, hear attorneys make leniency pleas on behalf of defendants, while these defendants were not in the courtroom. After all counsel were heard the defendants were brought into court and then given an opportunity to be heard. In this case counsel left the courtroom after making his plea on behalf of the petitioner and was not present when the petitioner was sentenced. Furthermore, counsel, after requesting an adjournment of the sentencing, which request was denied, proceeded to make a plea on behalf of the petitioner by suggesting that the petitioner might have suffered brain injury while following his professional boxing career; he tried to make certain that certain other charges against the petitioner would not be used against him at the time of this sentence. Then, unfortunately, he said:
"Now, he has not been such a good boy, if your Honor please, as you no doubt know from the probation report. His record isn't anything to write home about. But there is one specific item that I would like to call to your Honor's attention and that is the charge in his record that happened to him while he was serving in the United States Armed Forces. He was charged there with the crime of rape and was sentenced to fifteen years.
But if your Honor will look further into the record you will note that some 18 months or possibly 20 months after he had been sentenced, he was recalled and discharged. The reason for that, your Honor, was that this young lady who had made the heinous charge against him recanted and admitted to the authorities that she had been living with this man and that she had only made the charge against him because he had threatened to leave her."
The above counsel's statement is made more unfortunate for the reason that petitioner and his counsel persist in each pleading or affidavit in omitting the above second paragraph, which, while also untrue in fact, would make it appear that the charge in the first paragraph was false.
*51 It is conceded and found as a fact that the petitioner had never been guilty of rape. Mr. Santa Maria testified he believed he may have obtained this information from a member of the family. However, his testimony in this respect is not too helpful to the court. The origin of this information continues to remain unknown especially since Mr. Santa Maria's file has been lost in the process of moving his office.
This court considered this problem fully at the May 1955 hearing, and in its oral opinion delivered at the conclusion of the hearing on May 23, 1955, stated in part:
"As to the matter of the conviction of rape, I must assume for the purpose of this hearing, because it has been conceded by the State, that this was a most unfortunate error in which the sentencing judge's attention was invited to a conviction which did not exist. Fortunately we have available for us the very careful notations made in the handwriting of the late Judge Naughright showing what the sentence was and showing that attached to his sentence sheets were the record of this defendant, which does not show any conviction while in service. We do not know what was before the judge on the pre-sentence report, but I do find that the State's contention in this respect is sound, namely, that there can be no presumption that a sentencing judge would be influenced by incompetent evidence, and the court has read the pertinent case of People v. Popescue, 345 Ill. 142, 177 N.E. 739 [77 A.L.R. 1199] (1931).
Judge Naughright's notes further show that after argument there was no change in the sentence either upward or downward. It is usual in this county to go over the sentences with the Probation Department and come to tentative sentences, then hear the argument of counsel, and either reduce or increase the sentences. On the same sheets that have been introduced in evidence Judge Naughright's notes show that certain sentences were reduced on the date that this sentence was imposed."
Obviously, the practice of hearing counsel and defendants separately was not a desirable one, but there was no violation of R.R. 3:5-4 since the petitioner was present at the imposition of sentence.
Counsel urges that the case of Townsend v. Burke, 334 U.S. 736, 739, 68 S.Ct. 1252, 1254, 92 L.Ed. 1690 (1948), is analogous to the present case. In that case the court recited three charges against the defendant, one of which had been dismissed and on two others the defendant had *52 been found not guilty. In the present case this court is satisfied that the sentencing judge did not use the erroneous information given him by counsel.
There can be no question of the accused's right to counsel. It is a fundamental right guaranteed by Article I, paragraph 10 of the New Jersey Constitution, and by rule of court, R.R. 3:2-3. A discussion of the subject is found in the following cases: State v. Ballard, 15 N.J. Super. 417 (App. Div. 1951), certification granted 8 N.J. 320 (1951), affirmed on opinion before 9 N.J. 402 (1952), and State v. Cynkowski, supra.
Article I, paragraph 10, of the New Jersey Constitution provides in part "* * * the accused shall have the right * * * to have the assistance of counsel in his defense." The term "defense" has been defined in State v. Murphy, 87 N.J.L. 515, at page 530 (E. & A. 1915):
"Obviously, the word `defense,' as here used, means that a defendant is entitled to be represented and defended by counsel when put in jeopardy on his trial, and that his counsel shall have reasonable access to the prisoner for the purpose of preparing his defense. A criminal defendant at large on bail has this latter privilege to the full. By no stretch of the imagination can the provision be construed to mean that one accused of crime shall have the benefit of counsel to advise him as to whether or not he shall confess."
In the present case petitioner had the assistance of counsel at his plea, in accordance with his constitutional right.
There is no guaranty of right to counsel at sentencing under our State Constitution, nor is there proof in this case that failure of counsel to remain for sentencing, or failure of the court to have the petitioner present at counsel's plea for leniency was so unjust or unfair, as to warrant a release of the prisoner on habeas corpus.
In retrospect, counsel for the petitioner at the time of sentencing must agree that his handling of the matter was not the best performance of competent, loyal, able and interested counsel. The application for adjournment of sentence could have been more vigorously asserted, and certainly the plea for leniency made on behalf of the petitioner *53 should have been more carefully prepared, with better documentation of the facts used. Also, counsel should have remained for the actual sentencing. These are the duties of every counsel.
This court is satisfied, nevertheless, that counsel took every step throughout the making of the non vult pleas, in accordance with instructions from, and after conference with, the petitioner, and that the petitioner made those pleas understandingly and voluntarily. What the petitioner wanted on the date of sentence was an adjournment. The granting or denial of adjournment of sentence is discretionary with the sentencing judge, and is not available as a ground for habeas corpus. On the whole, the petitioner was not prejudiced by the action of his attorney at the time of sentencing.
The court finds as a fact that Mr. Santa Maria never suggested to petitioner that the case could be fixed. Nor did he receive or demand money to fix the case. Nor did he suggest to the petitioner that the three indictments on which he pleaded could be fixed before sentence.
The court places little credence in the testimony of the petitioner. It is obvious to the court that petitioner intends to gain his liberty by whatever means he deems necessary, including, among others, the destruction of an attorney's reputation. The last-minute, reluctant manner in which he testified about cash payments made to Mr. Santa Maria for the purpose of a fix, was not worthy of credence. He admits he lied to the Navy about his education. I find that his story about not hearing the judge pronounce the sentences as being consecutive is as unbelievable as is his testimony that Mr. Santa Maria did all the talking at the time his non vult pleas were made to the indictments.
This defendant attempts to convert a mistake on the part of his counsel and an erroneous certification of his sentence record into a ticket to freedom.
The writ is discharged.