57 N.J. Super. 93 (1959)
154 A.2d 29
BENNY JENKINS, PETITIONER-APPELLANT,
v.
STATE OF NEW JERSEY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 27, 1959.
Decided August 5, 1959.
*97 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Samuel M. Koenigsberg argued the cause for appellant (Mr. Hymen B. Mintz, assigned counsel, attorney).
Mr. C. William Caruso, Special Legal Assistant Prosecutor, argued the cause for respondent (Mr. Brendan T. Byrne, Deputy Attorney General and Acting Prosecutor, attorney; Mr. Caruso, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Jenkins, through counsel assigned by this court, appeals in forma pauperis from a County Court order denying his application for a writ of habeas corpus.
Jenkins was arrested on charges of armed robbery, theft of an automobile and carrying a concealed weapon, and brought before the Newark Municipal Court where he executed a written waiver of his right to indictment and trial by jury. On May 2, 1955 he was arraigned before the Essex County Court on 11 accusations: in 6 he alone was charged with armed robbery; in 3 he and one Young were jointly *98 charged with armed robbery; and in the 2 others he was charged with automobile theft and carrying a concealed weapon. The accusations covered a series of crimes crowded into the two-month period of February 13 to April 13, 1955, on which date Jenkins was taken into custody.
The arraignment proceedings began with the court crier making the following inquiry:
"COURT CRIER MICHAEL J. DOYLE: Do you have a lawyer, Mr. Jenkins?
MR. JENKINS: No, sir.
MR. DOYLE: Are you financially able to employ one?
MR. JENKINS: No.
MR. DOYLE: Do you wish the court to assign a lawyer before you plead?
MR. JENKINS: No."
The judge asked Jenkins what plea he intended to enter, and he answered "Guilty." The court then asked one of the attorneys present, a respected member of the New Jersey Bar, if he would consult with Jenkins. When he indicated he was willing, the court asked him if he would also speak with the co-defendant, Young. After he had done so, all three appeared before the judge and the attorney represented that he had reviewed with Jenkins all 11 accusations, that the prisoner understood precisely what his constitutional rights were and that he nonetheless desired to plead guilty. The attorney also stated that he had explained the waiver of indictment and trial by jury which Jenkins had signed, that the prisoner understood the waiver, that he was willing to proceed without a jury and wished to waive the reading of the accusations. After the assistant prosecutor had ascertained from Jenkins that he had read the accusations and had them read to him, that he wanted to plead guilty to each of them, and that in pleading guilty he was admitting the truth of the charges, the court accepted the pleas and fixed May 11, 1955 for sentence.
On sentencing day Jenkins was brought before another judge of the County Court who proceeded to review with *99 him the substance of each accusation and his pleas of guilty. The following then ensued:
"THE COURT: Is there anything you want to say before I impose sentence upon you?
DEFENDANT JENKINS: No.
THE COURT: You have no previous record?
DEFENDANT JENKINS: No."
The court imposed State Prison sentences on Jenkins of 5-10, 5-10 and 3-5 years, respectively, on the three accusations charging him and Young with armed robbery, and 5-10 years on the charge of carrying a concealed weapon. These terms were to be served consecutively, and totaled not less than 18 nor more than 35 years. Sentence on the remaining seven accusations against Jenkins were suspended. The County Court judge then said:
"* * * It does not come easy to a judge to sentence a youngster eighteen years old to a term of eighteen to thirty-five years. Although the age of defendant is to be taken into consideration in certain circumstances, when we deal with a series of offenses as serious and as numerous as yours the only break that a judge can give you is not to give you the maximum on each.
On each of these offenses I could have added up a total of at least twice, almost three times, what I gave you. When I only give you eighteen to thirty-five years I give you the benefit of every break. There is no justification for what you did. And I find absolutely nothing in what you did and the way you did it which bespeaks anything less than the sentence I gave you."
The foregoing constitutes substantially all that transpired at the sentencing. Although Jenkins had had the benefit of consulting with an attorney at the time of his plea, counsel was under no continuing responsibility to advise him thereafter. Jenkins was not represented when he appeared for sentence; the sentencing judge did not advise him of his rights in this respect, nor did he inquire whether Jenkins desired to have or to waive the assistance of counsel.
In November 1957 Jenkins made application to the Essex County assignment judge for a writ of habeas corpus. The matter was referred to a County Court judge  not the one who had taken the plea nor the one who had imposed sentence *100  for disposition. In his application defendant claimed that (1) he could not have intelligently waived indictment because he did not have the benefit of counsel at the time and because of his age and lack of experience with the law; (2) he pleaded guilty because officers of the robbery squad, whom he did not know by name but could identify in a "lineup," promised that he would receive a five-year indeterminate reformatory sentence if he would admit the crimes and enter a plea thereto; (3) his confession was coerced by the investigating officers; (4) he was held incommunicado until his confession had been obtained; (5) he was incarcerated for ten days before being arraigned; (6) he was denied the timely assistance of counsel, and did not have the benefit of effective counsel because his consultation with the designated attorney lasted only five to ten minutes; (7) he was unable intelligently, by reason of lack of schooling, age and mental makeup, validly to waive indictment, plead and properly answer at the time of sentence; (8) the sentences imposed were unusually severe in view of these circumstances and the fact that he had no prior record; and (9) he did not have the benefit of counsel at the time of sentence, nor was he advised of his right to counsel.
Jenkins was assigned counsel to represent him on the application for the writ. Prior to the hearing he was examined by members of the staff of the State Hospital, and their reports were introduced in evidence by consent. Assigned counsel had also been granted leave to have his client examined by physicians of counsel's own choosing. This was done by two residents in psychiatry at the Yeshiva University, New York City. However, because the State Hospital staff reports were not concluded until very shortly before the hearing, the formal report of the residents in psychiatry was not ready at the time of the hearing, and the county judge refused to permit it to be filed later. Counsel had requested this independent examination for the sole purpose of aiding the court in determining whether the sentences imposed were appropriate in Jenkins' circumstances, and *101 not to establish his mental incapacity to commit the crimes or intelligently to comprehend his waiver of indictment and trial by jury and his plea.
At the hearing on the application for the writ the principal point urged on Jenkins' behalf was that his lack of counsel at sentencing and the failure of the trial judge to inform him of his right to counsel was prejudicial and rendered the sentences nugatory. It was claimed that had Jenkins then had such legal assistance, counsel might have developed some of the personality deficiencies with which the prisoner was afflicted and called to the court's attention significant background features that would have secured his client a more favorable sentence. Although counsel reserved the right to argue the other grounds alleged in the application for the writ, the hearing was exclusively concerned with the issue of the right to counsel at the sentence. No testimony was taken. The county judge limited his consideration to that single contention and denied the writ.
On this appeal Jenkins urges six main points. The first three involve his constitutional right to counsel at the sentencing, and these include as sub-points the arguments that he did not waive the right and that failure to communicate to the court the promise which induced his pleas of guilty rendered the sentence invalid in the absence of counsel. The fourth point is that Jenkins was entitled at the time of sentencing to an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment. The fifth is that the County Court judge, in denying the writ, failed to pass upon any of the allegations of the habeas corpus petition other than lack of counsel at the time of sentence. The final contention is that the court should have admitted in evidence and considered the report of the prisoner's own physicians.
At the time of sentence Jenkins was within a week of turning 19. The State Hospital reports considered on the application for the writ were based on a "rapid evaluation" (the phrase used by the clinical director) in the following *102 areas: (1) neurological  no evidence of organic disease of the nervous system; (2) psychological  patient low in the average range of the intelligence scale, this to be considered against the background of defective verbal abilities and high average psycho-motor skills; difficulty in reading and spelling, and inability adequately to explain sentences which he appeared to understand (a pattern typically found in individuals who show long-standing, generalized cerebral disfunctioning in the left hemisphere); patient a somewhat withdrawn, overly cautious young man who is suspicious of the motives of other people, and capable of aggressive, anti-social behavior without having to feel concerned about those he might hurt; no evidence of psychosis; (3) electroencephalogram  "Impression: Normal Routine 8 Lead Electroencephalogram"; (4) psychiatric  no peculiarities indicative of psychosis, but patient gives the impression of being basically inadequate, unstable and rather immature individual; powers of reasoning and comprehension evidently mature to some extent; unable to give any explanation for his criminal activities; an accident at age nine resulted in head injuries and a three-months' hospitalization; patient denies epileptic seizures or any dizzy spells; he is unable to read or write except for a few simple words, and his insight and judgment are somewhat defective; no physical abnormalities; "Impression: Personality Pattern Disturbance, Inadequate Personality."

I.
Technically, the application here should have been for vacating the sentences as invalid and for resentence after Jenkins had had the help of assigned counsel, appearing with him at the resentencing. It has been said that the writ of habeas corpus will not ordinarily issue when other adequate relief to correct error is available to the applicant, or when he would not be entitled to an immediate release. In re Kershner, 9 N.J. 471, 476 (1952). There is some indication that where an issue as to the legality of a sentence *103 arises dehors the record, the remedy is by habeas corpus. McIntosh v. Pescor, 175 F.2d 95, 98 (6 Cir. 1949)  dictum; but cf. Byrd v. Pescor, 163 F.2d 775, 779 (8 Cir. 1947). See Manda v. State, 28 N.J. Super. 259, 264 (App. Div. 1953), commenting on these cases and stating that the strong tendency of the law of this State is against building up separate forms of action; "a party should not be put out of court if through error he selects the wrong form." Assigned counsel points out that the issue here arises both on the record (the lack of counsel) and also dehors the record (the alleged promise of leniency made to Jenkins which induced his pleas). The requirement that the petitioner be entitled to an immediate release is modified if, in the court's opinion, the circumstances required that some remedy be afforded. Jablonowski v. State, 29 N.J. Super. 109, 114 (App. Div. 1953). Our courts generally permit latitude on matters of form in applications of this character. Cf. In re Somers, 43 N.J. Super. 234, 237-238 (Law Div. 1957), where the court treated an application for a writ of habeas corpus as the equivalent of an appeal from a refusal to correct a sentence.

II.
The State meets Jenkins' contention that he was constitutionally entitled to the assistance of counsel when he was sentenced by a much broader argument which seeks to block out every possible claim under this head. It is the position of the State that there was a full compliance with the pertinent rules of practice and procedure, both after the arraignment and at the sentencing, under R.R. 1:12-9(a) and R.R. 3:7-10(c); that Jenkins had the benefit of assigned (sic) counsel at the arraignment, and with his assistance entered pleas of guilty voluntarily and understandingly; and that at the time of sentencing, "although defendant was not then represented by counsel (not provided for in the rule), the judge complied with every requirement of the rule, *104 R.R. 3:7-10(c), and under the circumstances of the case, defendant cannot complain of any denial of constitutional right or due process of law, particularly where at the time of sentencing defendant failed to call the court's attention to the absence of counsel and there has been no clear showing how defendant was in any manner prejudiced by lack of counsel."
It is significant that the State does not squarely meet the defense argument that Jenkins did not waive his constitutional right to the benefit of counsel, present and arguing in his favor at the time of sentence. As we shall point out in III below, Jenkins did not waive that right. If his petition is to be denied, it should be done by squarely meeting and rejecting the constitutional argument he advances, and not by implying a waiver where none in fact existed.
Jenkins does not rest his argument on our rules of procedure. They do not, in express terms, grant him the right to counsel at sentencing, but they are susceptible of a construction consistent with his position. If it be found that the Constitution does require counsel at the time of sentence, no violence would be done to the rules by its enforcement.
R.R. 1:12-9(a), which appears under the general heading of "Practice of Law," requires that
"Where a person charged with crime appears in any court, without counsel, the court shall advise him of his right to counsel and of the privilege of having counsel assigned, if indigent, and assign counsel to represent him unless he elects to proceed without counsel or is able to obtain counsel. * * *"
This language is of sufficient breadth to encompass a defendant's appearance for sentencing. R.R. 1:12-9(b) recognizes the appropriateness of counsel at the time of sentence because it directs that "The duties of counsel assigned pursuant to paragraph (a) of this rule shall continue through and end after sentencing and the order assigning him shall so provide." (This language is the result of *105 a 1958 rule amendment. The rule as it stood when Jenkins was arraigned and sentenced in 1955 required assigned counsel to represent his client not only at the trial but after sentence, on an appeal and in proceedings to correct an illegal sentence or for a writ of habeas corpus. Thus, the rule contemplated that once counsel was assigned he would serve through each step in the proceedings involving his client.) In 1955, as now, the Supreme Court recognized a defendant's need for counsel at the time of sentence, unless he expressly and understandingly waived that right.
The State stresses the fact that R.R. 3:7-10(c), which sets out the procedure at the time of sentence, does not mention the presence of counsel. From this it argues there is an inference that the presence of counsel is not required at that time. It contrasts this situation with the procedure on arraignment where, it says, the rules expressly state that counsel shall be present. True, R.R. 3:7-10(c) is silent on the question of counsel. True, also, that R.R. 3:2-3(b), relating to preliminary hearings, requires a magistrate to inform a defendant of his right to retain counsel or, if indigent, of the privilege of having counsel assigned; and that under R.R. 3:5-1, dealing with pleas on arraignment, the court before accepting a plea shall require the defendant to complete a questionnaire in the form of Criminal Procedure Form 13A. (This form inquires whether defendant is represented by an attorney; if not, is he able to afford the services of one and, if unable to do so, does he want the court to assign an attorney to represent him.) But it does not follow that because R.R. 3:7-10(c) is silent on the matter, the presence of counsel is not required. The spirit of our rules is that a defendant shall have the benefit of consulting and advising with an attorney at every significant step of a criminal cause, including the sentence, unless he knowingly and intelligently relinquishes that right.
We observe that under Part VIII of the Rules, governing practice in the local criminal courts, R.R. 8:4-2 describes the procedure at arraignment but does not mention the *106 presence of counsel. R.R. 8:3-3(b), dealing with the preliminary hearing, does say that in that proceeding the defendant shall be apprised of his right to have counsel appointed, if indigent. And yet it cannot be denied that counsel is just as important to a defendant on arraignment before a magistrate as at the preliminary hearing, and unless he has waived the right to legal representation at that hearing, he must be represented at the arraignment. The rules governing each successive stage of a criminal proceeding do not expressly state that counsel shall be present at, for example, the arraignment, the impaneling of the jury, throughout the trial, or at the time of sentencing. But in our view the mandate of R.R. 1:12-9(a) infuses every material step in a criminal proceeding, absent waiver of counsel. In short, the silence of R.R. 3:7-10(c) does not negate the existence of the right to counsel at sentence.
However that may be, the issue transcends the rules; it must be resolved on constitutional grounds. It is claimed that the sentencing of Jenkins without counsel being present deprived him of due process under the Fourteenth Amendment to the United States Constitution. It is, of course, necessary to keep clear the distinction between the obligation placed on the courts of New Jersey by the Fourteenth Amendment and that which stems from our own State Constitution, Art. I, par. 10. The former requires only that a criminal defendant be accorded "due process of law." Assigned counsel acknowledges that the United States Supreme Court has held that in non-capital cases the right to counsel is not mandatory upon the states in all circumstances, Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942); Bute v. Illinois, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986 (1948), but argues that Jenkins' youth, ignorance and inexperience, and his reliance upon the promise given him by the police, makes this a case where failure to afford him counsel at sentencing violated the due process clause of the Fourteenth Amendment, citing Green v. Robbins, 120 F. Supp. 61 (D.C.S.D. Me. 1954), affirmed *107 Robbins v. Green, 218 F.2d 192 (1 Cir. 1954); Uveges v. Pennsylvania, 335 U.S. 437, 69 S.Ct. 184, 93 L.Ed. 127 (1948); Moore v. Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957). Cf. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527 (1932) (death sentence), and cases there cited. We are referred to the language in such cases as Crooker v. California, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958); Cicenia v. Lagay, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958); and United States ex rel. Stoner v. Randolph, 165 F. Supp. 284 (D.C.E.D. Ill. 1958); and a line of cases like Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908); and Adamson v. California, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223 (1947), rehearing denied 332 U.S. 784, 68 S.Ct. 27, 92 L.Ed. 367 (1947), which hold that although the Federal Constitution does not make the recognition of the Fifth Amendment privilege against self-incrimination obligatory upon the states, if a state independently recognizes the privilege, the due process clause of the Fourteenth Amendment requires that it permit no unfavorable presumption to arise upon its exercise.
Although the argument based upon the rationale of these cases may be deemed pertinent and perhaps in a measure persuasive, we prefer, in considering whether the right to counsel extends to the time of sentencing, to rest our decision on the provisions of our own State Constitution.
The right to counsel is, of course, fundamental to the administration of criminal justice in New Jersey. The Constitution of 1947, Art. I, par. 10, contains a requirement much more explicitly stated than "due process." It provides that "In all criminal prosecutions the accused shall have the right * * * to have the assistance of counsel in his defense." See State v. Ballard, 15 N.J. Super. 417, 420 (App. Div. 1951), affirmed 9 N.J. 402 (1952). This right is recognized by R.R. 1:12-9(a), discussed above, a rule which embodies a practice initiated in this State by statute *108 as early as 1795 and apparently the first of its kind in the country. Beaney, The Right to Counsel in American Courts, 21 (1955). The guarantee of counsel provided by our Constitution is practically identical with the Sixth Amendment to the Federal Constitution which, of course, applies only to the federal courts.
The wording of the State Constitution is imprecise as to the outer limits of this right to counsel. It is a declaration of a right, a principle, which can only attain specificity through judicial decisions, statutes and rules, which implement it and give it definite content. It would be possible to give a narrow construction to this declaration of the right to counsel by a literal reading of the words "prosecutions," "accused," and "defense." These terms could carry an implication that the Constitution of 1947, like that of 1844 (Art. I, par. 8), is concerned only with a defendant's representation at a trial in which he has denied his guilt. Neither our courts in interpreting Art. I, par. 10, nor the federal courts in interpreting the Sixth Amendment to the Federal Constitution, have thus narrowly circumscribed the right to counsel. See, for example, Carter v. Illinois, 329 U.S. 173, 178-179, 67 S.Ct. 216, 91 L.Ed. 172 (1946); Von Moltke v. Gillies, 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed. 309 (1948).
A defendant clearly has a constitutional right to the assistance of counsel before he pleads guilty to a charge against him, and a failure to inform him of this right will vitiate his conviction on such a plea. State v. Griffith, 14 N.J. Super. 77 (App. Div. 1951). But the right to counsel does not stop there. We are concerned with whether a defendant, under the circumstances here present, is entitled to counsel at his sentencing. That the aid of counsel at that stage of the proceeding may well be of greater importance than on the plea was suggested by the Supreme Court of the United States in Carter v. Illinois, above, 329 U.S. 173, at pages 178-179, 67 S.Ct. 216, at page 220, *109 affirming a murder conviction of 99 years' imprisonment, where it was said:
"* * * A trial court may justifiably be convinced that a defendant knows what he is about when he pleads guilty and that he rightly believes that a trial is futile because a defense is wanting. But the imposition of sentence presents quite different considerations. There a judge usually moves within a large area of discretion and doubts. Such is the situation under Illinois law. The range of punishment which a judge in Illinois may impose for murder is between fourteen years and death. It is a commonplace that no more difficult task confronts judges than the determination of punishment not fixed by statute. Even the most self-assured judge may well want to bring to his aid every consideration that counsel for the accused can appropriately urge. In any event, the designation of counsel to assist the accused at the sentencing stage of the prosecution in no wise implies that the defendant was not capable of intelligent self-protection when he pleaded guilty. * * *"
It seems to us that a constitutional provision declarative of what the framers considered a fundamental right must be given a construction which will accord with the basic premise of the declaration  that is, insofar as it can practically be accomplished, a criminal defendant should be accorded the opportunity to have counsel for whatever purposes he may need counsel. We have, as noted above, recognized this in our rules by providing that where a person charged with crime appears in any court without counsel, he shall be advised of his right to counsel and the privilege of having counsel assigned, if indigent. Counsel shall be assigned unless the person charged elects to proceed without one or is able to obtain his own counsel. R.R. 1:12-9(a). The duties of assigned counsel shall extend through the time of sentencing. R.R. 1:12-9(b). And we have also provided for the appointment of counsel where an indigent person convicted of crime desires to take an appeal, or to institute proceedings to correct an illegal sentence or for a writ of habeas corpus. R.R. 1:12-9(c).
The federal courts have been practically unanimous in holding that the Sixth Amendment right to counsel applies *110 to the time of sentencing. State courts have not been. New Jersey has one case in which the existence of such a right was denied. In State v. Rose, 40 N.J. Super. 40, 52 (Cty. Ct. 1956), the county judge, after very brief discussion, flatly stated that there was no guarantee of right to counsel at sentencing under our State Constitution. But counsel there, while absent at the sentencing, had in fact made a plea for leniency prior to sentence, thus discharging the important function attributed to him in Carter v. Illinois, above. The court declared that the practice of hearing counsel and defendant separately was not a desirable one, but held there was no prejudice because the prisoner was present at the imposition of sentence. The county judge observed that counsel should have remained for the actual sentencing; it was his duty to do so.
The court in the Rose case quoted from State v. Murphy, 87 N.J.L. 515 (E. & A. 1915), which involved a claim by defendant that he had a constitutional right to consult with counsel before deciding to confess to the crime. In correctly denying the claim our highest court said that the word "defense" in the State Constitution meant that the right to counsel applied to representation when put in jeopardy, and the right to consult with him in preparing a defense. On appeal in Rose the Appellate Division, while affirming on a number of points determined by the County Court, did not affirm the rejection of the right to counsel on sentencing. On the contrary, it noted the possibility that sentences had been improperly pronounced on repugnant offenses and stated, 41 N.J. Super. 434, at pages 436-437 (1956):
"This characteristic of the sentencing proceedings assumes material significance in that petitioner's attorney was not then present to invite the court's attention to the inconsistent counts. * * *
In the light of the conditions here admittedly existing, we feel impelled to say that if the petitioner in his discretion desires in a proper manner to apply for a resentence, his request should be granted. * * * It is noted that the other complaints asserted by the petitioner also relate essentially to the sentencing proceedings."
*111 Contrast with Rose the case of In re Sabongy, 18 N.J. Super. 334 (Cty. Ct. 1952), where the court inclined toward recognition of the right to counsel at sentencing. Sabongy and his co-petitioner in habeas corpus, Torzillo, had confessed to a series of crimes in Bergen and Essex Counties. A Bergen county judge imposed a sentence of from 12 to 15 years. Some months later the petitioners were brought to Essex County to plead to an indictment. The assistant prosecutor of that county, convinced that this crime had been considered along with the whole series of offenses when sentence was imposed in Bergen County, promised petitioners that he would recommend concurrent sentences to the Essex sentencing judge. Petitioners, relying on this assurance, pleaded non vult, their counsel not appearing. The Essex judge, who had not been informed of the assistant prosecutor's recommendation, imposed a sentence consecutive to the Bergen County sentence, again in defense counsel's absence. In a habeas corpus proceeding brought ten years later Judge Hughes referred to the well-known rule that a prosecutor's recommendation could not bind the sentencing court. However, he considered the lack of counsel resulting from the anticipated recommendation by the assistant prosecutor as of great significance:
"The importance of the unfulfilled promise to make this recommendation, however, lies not in the failure of performance, nor in the failure of the court to impose a concurrent sentence, but in the consequences in respect of the presence of counsel and the assistance thereof in connection with entering the pleas, and at the imposition of sentence. Mr. DeLuccia, counsel for Torzillo in the Bergen County cases, was certainly absent when these pleas were entered and sentences imposed only by reason of the well-founded expectation that concurrent sentences would be recommended and would probably be imposed upon these defendants. There was such an exact community of interest between Sabongy and Torzillo that the lack of counsel familiar with the existing situation is directly attributable to the same cause. The entry of a plea equivalent to that of guilt, of course, is as significant as a trial on the merits, and the assistance of counsel is equally necessary and as firmly guaranteed in the constitutional sense. * * *
*112 Deprivation of counsel is equally significant whether accomplished by threat * * *, inadvertence * * *, pressure of judicial business * * *, mistake * * *, haste * * *, conflict of interest * * *, or trick * * *." (at pages 344-345; cited cases omitted)
(To this list there would properly be added the mistaken belief on the part of the sentencing court that counsel was not legally required.) Judge Hughes concluded that petitioners had been deprived of the assistance of counsel and that the trial court consequently had no jurisdiction to receive their pleas or impose the sentences complained of.
The Sabongy and Rose cases appear to be the sole New Jersey authorities touching on the question here under consideration. The state of our law being somewhat fluid and containing no constitutional determination on the subject, it is appropriate to broaden the inquiry to precedents elsewhere.
Before doing so we would refer to the decision of this court in Zasada v. State, 19 N.J. Super. 589 (App. Div. 1952), a habeas corpus proceeding where the prisoner sought discharge because he had been denied the assistance of counsel at his trial. We there pointed out the distinction between the limitations which the United States Constitution placed on the federal courts by the Sixth Amendment, and that which it placed on state courts through the Fourteenth Amendment. We recognized that "judicial action by a state court which, if it had occurred in a federal court, would violate the Sixth Amendment, does not necessarily deprive the accused of due process of law," and went on to say:
"* * * While the appellant in the matter now before us urges his rights under the Fourteenth Amendment, we have not found it necessary to consider whether he has been denied due process, for our own Constitution imposes on our courts a more specific and a probably greater duty, in respect to the assistance of counsel, than does the Fourteenth Amendment. As already pointed out, the pertinent phraseology of our State Constitution is the same as that of the Sixth Amendment. In our opinion, we should generally give to our constitutional guarantee of the right to the assistance of *113 counsel the same meaning and force that is attributed to the Sixth Amendment. * * *" (at page 595)
This, of course, does not mean that we should slavishly follow every federal case in point, but it does mean that when virtually every federal court which has considered the issue has reached the same conclusion, there should be some impelling reason for ignoring such strong authority.
The Court of Appeals for the District of Columbia circuit has held that the Sixth Amendment requires that a defendant be given the opportunity to have counsel present at the time of sentencing. Gadsden v. United States, 96 U.S. App. D.C. 162, 223 F.2d 627 (1955); McKinney v. United States, 93 U.S. App. D.C. 222, 208 F.2d 844 (1953); Walton v. United States, 92 U.S. App. D.C. 26, 202 F.2d 18 (1952). The Gadsden case is particularly significant in indicating that the court will not tolerate a mere formal appearance, but requires that a defendant be effectively represented. There defendant's attorney, early in the day set for sentencing, consulted with the judge in chambers concerning the case. There is no indication of what had been discussed. The attorney was not present at the sentence; rather, her husband and law partner, who had been associated in the case, appeared with defendant at the time of sentencing and reminded the judge that his wife had spoken to him about the matter, stating "I can add nothing to it." The husband made no plea for leniency. The Court of Appeals might well have yielded to the Government's contention that the conference satisfied the constitutional requirement that counsel be present at sentencing. Instead, the court, after declaring that the right to effective assistance of counsel at the sentencing stage of the proceedings is guaranteed by the Federal Constitution, held that the prisoner could not be deemed to have waived his right to have a plea in mitigation made in open court and in his presence.
The court in Gadsden quoted from Martin v. United States, 182 F.2d 225, 20 A.L.R.2d 1236 (5 Cir. 1950), certiorari denied 340 U.S. 892, 71 S.Ct. 200, 95 L.Ed. 647 (1950). *114 In Martin the Fifth Circuit reversed the position it had taken nine years earlier in Kent v. Sanford, 121 F.2d 216 (1941), and held that:
"It may be safely said that at this time there is no question of constitutional law any more firmly established than the oft enunciated and applied principle that, in the trial of criminal cases in the federal courts, the defendant is entitled to have the guiding hand of counsel at every stage of the proceeding." (at page 227)
The court went on to say that, absent an intelligent waiver of the right, the court must appoint counsel for defendant not able to employ one, or it loses jurisdiction to proceed. But it then noted that the mere absence of counsel at one stage of the proceeding does not necessarily require a court to upset a conviction; "A great deal depends upon the nature of the `stage of the proceedings' from which the counsel is absent. If it be of such minor legal significance as to refute even a possibility of injury, such inconsequential impingement of the constitutional right is merely error without injury."
In the Martin case defendant's appointed counsel had been excused by the court before the verdict was returned. The court held that the absence of counsel at that time could not have prejudiced defendant. True, there was a right to poll the jury, but the benefit to a defendant from this right, said the court, is substantially non-existent. The court would not upset a conviction on that ground. It then said:
"The very nature of the proceeding at the time of imposition of sentence makes the presence of defendant's counsel at that time necessary if the constitutional requirement is to be met. There is then a real need for counsel. The advisability of an appeal must then, or shortly, be determined. Then is the opportunity afforded for presentation to the Court of facts in extenuation of the offense, or in explanation of the defendant's conduct; to correct any errors or mistakes in reports of the defendant's past record; and, in short, to appeal to the equity of the Court in its administration and enforcement of penal laws. Any Judge with trial Court experience must acknowledge that such disclosures frequently result in mitigation. or even suspension, of penalty. That it is also true that such discussion sometimes has a contrary result, does not detract from the *115 fact that the nature and possibilities of this important stage of the proceedings are such as make the absence of counsel at this time presumably prejudicial." (182 F.2d, at page 227)
In Wilfong v. Johnston, 156 F.2d 507 (1946), the Ninth Circuit held that the failure of a defendant to be represented by counsel at the time of sentencing deprived him of his constitutional rights, and went on to distinguish that situation from one in which the absence of counsel could not possibly have prejudiced him. Defendant did not have counsel at the time of his arraignment when he pleaded not guilty. Before trial he secured counsel of his own choice, as well as an associate counsel, but the plea was not withdrawn. In such circumstances the court found it could be certain that he had not been prejudiced by lack of representation at the arraignment. But counsel-in-chief was not present at the sentence. Associate counsel was, but he stated that he was simply a spectator; his understanding was that he had been employed only to assist in the conduct of the trial, his services ending with the return of the verdict. The presence of associate counsel was held not to meet the guarantee of the Sixth Amendment. The court concluded that defendant had not waived his right to be represented by his counsel at the time sentence was pronounced, and so had been deprived of his constitutional right.
Until the case of Willis v. Hunter, 166 F.2d 721 (1948), certiorari denied, 334 U.S. 848, 68 S.Ct. 1499, 92 L.Ed. 1772 (1948), the Tenth Circuit had never found it necessary to decide precisely whether the absence of counsel when sentence was imposed in and of itself amounted to a denial of the constitutional guarantee of the right to counsel. After reviewing the decisions in which it had commented on the desirability of having counsel present, discussing the need for counsel and the fact that the right to counsel is "a matter of substance, not form," which is not fulfilled by an empty gesture, the court concluded:
"* * * We think that the right to the effective assistance of counsel contemplates the guiding hand of an able and responsible *116 lawyer, devoted solely to the interest of his client; who has ample opportunity to acquaint himself with the law and the facts of the case, and is afforded an opportunity to present them to a court and jury in their most favorable light. If the accused does not have the assistance of counsel when entering a plea or when sentence is imposed, it must be manifestly clear to the court that he has competently and intelligently waived such right." (166 F.2d, at page 723)
Defense counsel in Willis had asked leave to reduce to writing his argument for leniency, since he would not be present at the sentencing. Defendant did not object to this procedure. The court said there was no reason to believe that a written argument is less persuasive than an oral one, and held that defendant did in fact have the guiding hand of counsel throughout the proceedings, including the sentence.
Among other cases sustaining the view that there is a constitutional right to counsel at the time of sentence are Davis v. United States, 226 F.2d 834 (8 Cir. 1955), and Stidham v. Swope, 82 F. Supp. 931 (D.C.D.Cal. 1949), in which Judge Denman, Chief Judge of the Ninth Circuit, pointed out the important function of counsel at this stage of a criminal proceeding.
There is some conflict in authority at the state court level on the question of whether the presence of counsel at the time of sentence is necessary to the validity of the proceedings, unless his presence is waived by the accused. Some of the cases are collected in the annotation in 20 A.L.R.2d 1240 (1951).
California has squarely held that its constitution requires that a defendant be accorded the right to have counsel present at his sentence, and failure to inform him of that right invalidates the sentence. In re Boyce, 51 Cal.2d 699, 336 P.2d 164 (Sup. Ct. 1959); In re Roberts, 40 Cal.2d 745, 255 P.2d 782 (Sup. Ct. 1953); In re Levi, 39 Cal.2d 41, 244 P.2d 403 (Sup. Ct. 1952); People v. Havel, 134 Cal. App.2d 213, 285 P.2d 317 (D. Ct. App. 1955). At the other end of the range of cases are the Georgia decisions in Welch v. State, 63 Ga. App. 277, *117 11 S.E.2d 42 (Ct. App. 1940); Screven v. State, 169 Ga. 384, 150 S.E. 558 (Sup. Ct. 1929); and Wilson v. State, 32 Ga. App. 77, 122 S.E. 640 (Ct. App. 1924). The Georgia Constitution had been interpreted as requiring the appointment of counsel for an indigent defendant. Nonetheless, the courts held that the absence of counsel at sentencing, defendant being present, was not ground for vacating the sentence or for a new trial.
Examination of the cases in which the right to counsel at sentence was denied or disparaged will reveal a number of circumstances not here present, such as a waiver (either express or inescapably arising from the facts), a court-wise defendant, other opportunities for counsel to exercise the duties normally performed at sentencing, and similar mitigating factors. A number of decisions may be explained in the light of the particular state constitution and statutes involved, interpreted by the courts of that state as giving a defendant no constitutional right to have counsel at sentence. In this connection see the discussion in Betts v. Brady, above, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, where it was held that the due process clause of the Fourteenth Amendment does not require a state to appoint counsel to represent a criminal defendant unless there is some particular reason why he requires an attorney, e.g., extreme ignorance to the point that he is completely incapable of defending himself, or perhaps in a capital case. Justice Roberts contrasted the Sixth Amendment of the Federal Constitution with the language of most state constitutions, and noted that whereas the court had held that the Sixth Amendment required the appointment of counsel (Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461), the constitutions of most of the 13 original states had provisions to the effect only that a defendant "should be `allowed' counsel or should have a right `to be heard by himself and his counsel,' or that he might be heard by `either or both' at his election." Keeping in mind that our State Constitution, Art. I, par. 10, has the same language as the *118 Sixth Amendment, it is evident that cases arising in jurisdictions having constitutional provisions of the kind described by Justice Roberts are not relevant to our problem.
People v. Hasenstab, 283 App. Div. 433, 128 N.Y.S.2d 388 (App. Div. 1954), relied on by the State, is a good illustration of the point just made. The relevant provision of the New York Constitution reads that "in any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions." (Art. I, § 6) In considering defendant's claim that the sentence was invalid because his counsel had been called into the Army before sentence was imposed, the court quoted from Betts v. Brady and stated that the New York constitutional provision was only designed to change the common law rule and permit counsel to appear on behalf of a defendant. It was not designed to insure that a defendant could have counsel appointed to represent him. Thus, the court held that it had to look to the statutes, and there it found no requirement for the presence of counsel at sentencing. The court incidentally noted that counsel had informed the judge he would be absent, had consulted with him, and had ample opportunity to present any evidence in mitigation of defendant's sentence.
Pennsylvania has interpreted its constitutional provision (Art. I, § 9, P.S.), which provides only that the accused "hath a right to be heard by himself and his counsel," as not requiring the court to inform a defendant of his right to counsel. To invalidate a conviction and sentence entered without the aid of counsel, the accused must show such an ingredient of unfairness as will indicate that the proceedings were not in accordance with "due process of law." Commonwealth ex rel. Swieczkowski v. Burke, 173 Pa. Super. 363, 98 A.2d 229 (Super Ct. 1953); Commonwealth ex rel. Uhler v. Burke, 172 Pa. Super. 108, 91 A.2d 913 (Super. Ct. 1953). This, of course, requires much more than does a showing that a defendant has been deprived of his right to counsel in jurisdictions like New Jersey or in the federal *119 courts, where the right is a specific guarantee beyond the more restrictive concept labeled "due process." See, also, Commonwealth ex rel. De Simone v. Cavell, 185 Pa. Super. 131, 138 A.2d 688 (Super. Ct. 1958), and Commonwealth v. Polens, 327 Pa. 554, 194 A. 652 (Sup. Ct. 1937), although in the latter case it was manifest that defendant could not have been prejudiced, counsel having been present at a hearing set to determine the degree of guilt and the penalty on a charge of murder to which defendant had pleaded guilty. Counsel could not be present at the actual sentence. Since he had introduced whatever mitigating factors were available, the case seems identical with the federal cases which refused to invalidate a sentence because of the obviously non-prejudicial absence of counsel. Nevertheless, the court expressly stated that the practice of sentencing in the absence of counsel is "most unusual and is hereby condemned." Similarly, cases like Hanvy v. State, 144 Tex. Cr.R. 351, 162 S.W.2d 721 (Ct. Crim. App. 1942), Schwartz v. State, 103 Miss. 711, 60 So. 732 (Sup. Ct. 1913) and State v. Hughes, 170 La. 1063, 129 So. 637 (Sup. Ct. 1930), holding that the accused had not been deprived of his right to be heard by counsel, must be considered against the particular constitutional provisions and local statutes involved.
We need not enlarge upon the observations made in Carter v. Illinois and Martin v. United States, from which we have quoted above, emphasizing the need for counsel at sentencing. From a defendant's standpoint the critical question then becomes, what price will the law require him to pay for his misdeeds? It is commonly considered that four principal elements enter into the determination of a sentence: punishment, deterrence of others, the protection of society, and the rehabilitation of the offender. The responsibility of defense counsel, as Judge Pharr of the Georgia Superior Court states in his article, "On Sentencing: What a Judge Expects From Defense Counsel," 1 The Practical Lawyer 76 (1955), is to analyze carefully the defendant, *120 the crime, and the possible sentences. Based upon the knowledge so accumulated, counsel should be in a position to show to the court, in reasoned, unemotional fashion, which of the available alternatives of punishment should be imposed. These are not simple tasks, and no layman  certainly not an inexperienced and untutored person like Jenkins  could be expected to attempt them with any real hope of effectiveness. Lack of counsel might therefore prove to be a severe handicap to an indigent defendant.
The presence or absence of counsel should, of course, be of no consequence in the court's assessment of the penalty to be imposed. Nonetheless, a report of the Criminal Law Reform Committee of the National Lawyers Guild, appearing in 17 Lawyers Guild Review 131 (1957) and summarizing a survey of criminal prosecutions in four counties of Massachusetts during the period 1949-1952, reveals that slightly over 65% of defendants with counsel who pleaded guilty to indictments received a probation disposition, while only 43% of unrepresented defendants so pleading received such lenient treatment. The report observes that an attorney, trained in advocacy and intimate with the attitudes of the court, can effectively present mitigating circumstances, such as economic conditions, motivation for the crime, and family background, which will result in a more understanding and fair disposition of the case.
Although the presentence report which a trial court has before it presumably contains a substantial body of information about the defendant and should be of real aid to the court in determining the penalty to be imposed, the report is not a complete substitute for assigned counsel. Although probation officers who prepare presentence reports unquestionably try to make them as complete as possible and to maintain an absolutely impartial attitude, the reports are not always adequate as an aid to scientific and individualized sentencing. See the Third Report of the New Jersey Law Enforcement Council, "Strengthening Probation Services" (1956). The Council there observed that in both large and *121 small probation offices "deficiencies result from spreading good or potentially good staff too thin and from denying them the proper facilities with which to work. Demands for probation service have increased more rapidly than staff to provide the service." (at page 5) It was estimated that New Jersey's probation system currently had about 40% of the total number of officers required for the workload. And see Knowlton, "Should Presentence Reports Be Shown to Defendants?", 79 N.J.L.J. 409, 417 (1956). According to the table appearing in the 1956 Report of the New Jersey Law Enforcement Council (Table C, page 24), the average monthly workload for Essex County (the county here involved) in 1954 required a total of 131 staff members, whereas the number was actually 56.
Our reference to the report and to the figures just given is not, of course, intended to diminish in any way the importance and pro tanto reliability of the presentence report. It is only meant to show that presentence investigation reports can be considered complete and three-dimensional in only relatively few cases. They are prepared under pressure of time and by limited staff. It has been recognized that in some cases such reports contain hearsay and inaccuracies. See "Due Process and Legislative Standards in Sentencing," 101 U. of Pa. L. Rev. 257, 267-270 (1952).
We therefore conclude that the right guaranteed by our State Constitution, Art. I, par. 10, requires, unless actually waived, the appointment of counsel to defend an indigent accused at every significant stage of the criminal proceeding, and this right extends through the time of sentencing. Not only is it of paramount importance to a defendant to have the assistance of counsel at the time of arraignment and throughout the trial, but also at the time when the quality and quantum of the penalty to be imposed is determined.
The County Court, in this case should have had the benefit not only of the presentence report but a presentation on Jenkins' behalf by assigned counsel, trained in the *122 marshalling and persuasive presentation of the facts. The denial of the accused's right to have the assistance of counsel at sentencing cannot be said, in the circumstances here present, to have been without prejudice to him.
From the reports of the State Hospital summarized earlier in this opinion we know now what the County Court judge probably did not  that Jenkins, 19 years old and new to the courts, was low in intelligence, had defective verbal abilities and was unable adequately to explain sentences he appeared to understand. He was withdrawn, basically inadequate, unstable and rather immature; his insight and judgment were defective. These characteristics might well have been discovered by diligent counsel and presented to the court for consideration. Certainly, counsel would have brought to the court's attention his client's claim that he had been promised an indefinite sentence at Annandale. The promise was of particular importance in relation to the absence of counsel at sentence. See In re Sabongy, above, 18 N.J. Super., at pages 344-345.
This fact was never elicited because the court failed, as required by R.R. 3:7-10(c), to inquire of defendant whether his plea "was voluntarily entered and not the result of any promises, threats or other inducements made by the prosecutor." The inquiry was limited to the single question, "Is there anything you want to say before I impose sentence upon you?" Contrast the requirement of the rule just cited: "Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment." We are not concerned here merely with semantics, but with a mandatory provision of the rule. Jenkins would probably not have understood what the court meant when it spoke of "mitigation of punishment," but his counsel, had he had one, would certainly have responded to the question.
It was suggested at oral argument that Jenkins was not actually prejudiced in the circumstances. The answer to this was given in Jablonowski v. State, 29 N.J. Super. 109, *123 112 (App. Div. 1953), where we said that "the right to the assistance of counsel is too inviolable a matter for any court to indulge in nice calculations as to whether or not the defendant was prejudiced under the circumstances." We cannot say that Jenkins may not have been prejudiced because he did not have the assistance of counsel when he appeared for sentence. We cannot know what, if any, effect counsel's presentation of Jenkins' background and deficiencies might have had on the sentencing judge. It is no answer that the judge imposed a much lighter sentence than he could have. The critical question is whether there was presented to the judge all the circumstances and arguments rationally material to punishment and which a lawyer might reasonably have been expected to advance. If not, there was prejudice.
We conclude not only that Jenkins was constitutionally entitled to be represented by counsel at the time of sentence, absent a waiver of that right, but that in the circumstances he was actually prejudiced by not having the benefit of counsel at that critical time.

III.
Did Jenkins waive his right to have counsel present and arguing in his favor when he was sentenced? As we have already observed, the State does not argue the point.
First, it is necessary to clear up the mistaken reference in the argument of this appeal to "assigned counsel." There was no assigned counsel. All that the court did was to request, at arraignment, that a bystander attorney consult with Jenkins to make sure he knew what his rights were, what he was charged with, and the nature of his plea. This was no regular assignment, as we understand it in our practice. The attorney's undertaking was an entirely limited one, and was completed when he returned to court some short time later to report the results of the consultation. Had that attorney truly been assigned, his duties would have run through the time of sentencing.
*124 A waiver is ordinarily "an intelligent relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, above, 304 U.S., at page 464, 58 S.Ct. at page 1023. As was said in Von Moltke v. Gillies, above, 332 U.S. 708, at pages 723-724, 68 S.Ct. 316, at page 323:
"* * * `The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused  whose life or liberty is at stake  is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.' [Footnote citation: Johnson v. Zerbst, 304 U.S. 458, 465 [58 S.Ct. 1019, 82 L.Ed. 1461]; see also Adams v. United States ex rel. McCann, 317 U.S. 269, 270, 63 S.Ct. 236, 87 L.Ed. 268] To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel [Footnote citation: Johnson v. Zerbst, 304 U.S. 458, 464 [58 S.Ct. 1019, 82 L.Ed. 1461]; Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680] a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered."
Justice Frankfurter, in a separate opinion in Von Moltke, observed that although an accused, in the exercise of a free and intelligent choice, and with the considered approval of the court, may competently and intelligently waive his right to the assistance of counsel, "There must be both the capacity to make an understanding choice and an absence of subverting *125 factors so that the choice is clearly free and responsible. If the choice is beclouded, whether by duress or by misleading advice, however honestly offered by a member of the prosecution, a plea of guilty accepted without more than what this record discloses can hardly be called a refusal to put the inner feeling of innocence to the fair test of the law with intelligent awareness of consequences. * * *" (at page 729 of 332 U.S., at page 326 of 68 S.Ct.) And see State v. Griffith, 14 N.J. Super. 77, 84 (App. Div. 1951); State v. LaSalle, 19 N.J. Super. 510, 514-515 (App. Div. 1952), certiorari denied, 344 U.S. 844, 73 S.Ct. 60, 97 L.Ed. 657 (1952).
In habeas corpus proceedings there is no presumption that a defendant, prior to judgment or sentence, waived his right to the assistance of counsel. State v. Terry, 30 N.J. Super. 288, 290 (App. Div. 1954). Rather, courts indulge every reasonable presumption against such a waiver of a fundamental constitutional right, and do not presume acquiescence in its loss. Johnson v. Zerbst, above, 304 U.S., at page 464, 58 S.Ct., at page 1023. See, also, State v. Petrucelli, 37 N.J. Super. 1, 7 (App. Div. 1955), where this principle was recognized, but the court held that defendant had intelligently waived his right; and Zasada v. State, above, 19 N.J. Super., at page 594.
From these cases the principle clearly emerges that our courts will not indulge the fiction of constructive waiver. If the court does not inform a defendant of his right to have counsel appointed to assist him, his failure to request such an appointment will not constitute a waiver of his right. The spirit of the constitutional guarantee of right to counsel must be effectuated, and in each case the court on review must satisfy itself that there was an actual, as opposed to an implied, waiver of a right which defendant knew he had and which he voluntarily and competently relinquished.
The cases just cited deal with a defendant's right to counsel at the time of arraignment or trial; none deals *126 specifically with the particular problem now confronting us. But the principle they enunciate is applicable here and can only lead to a finding that defendant did not waive his right to have counsel with him when he was sentenced.
If, as the cases state, a waiver consists only of the intelligent and voluntary relinquishment of a known right, it must follow that one waiving this right by declining an offer of counsel, does so only to the extent that he realizes what is being offered him, and understandingly and expressly rejects the offer. Here the court crier asked Jenkins if he had a lawyer or was financially able to employ one. The answer, as we have seen from the quoted record, was "No." The next question was: "Do you wish the court to assign you a lawyer before you plead?" (Emphasis ours) Again the answer was "No." The natural import of this question was whether Jenkins wished to consult a lawyer in regard to the advisability of pleading guilty. Presumably Jenkins did not feel the need of consultation on this matter. Presumably he understood the nature of the charges against him, knew he was guilty, and felt he had nothing to gain by pleading not guilty, particularly in view of the promise given him. The court, commendably, attempted to make certain that Jenkins understood the charges by having a lawyer briefly consult with him.
From all of this we may assume (with perhaps some margin of error that is inevitable) that Jenkins did understand the charges and knowingly waived his right to consult a lawyer on the advisability of pleading guilty. But we cannot infer from the colloquy that Jenkins knew he also had a right to have counsel at every significant stage of the proceedings which followed, including sentence more than a week later, when his assigned attorney could argue for leniency.
There is no reason to believe that Jenkins  a 19-year-old who had no previous contact with the law, a person of low intelligence and simple understanding, with defective insight and judgment  was sufficiently sophisticated or informed to understand that a lawyer at the time of sentencing *127 might help him. Nor is there reason to believe that when he answered "No" to the last question just quoted, he was understandingly and knowingly surrendering a right to have counsel argue his cause at the sentence.
A waiver of right to counsel at sentence may be spelled out from the record of this case only by finding a waiver "implied in law" from what Jenkins said and did. Such a finding would not be based on the facts before us but could only rest on an a priori declaration that, as a matter of law, his waiver of the right to consult with counsel concerning his plea constituted, under the circumstances of this case, a waiver of counsel on the subsequent sentencing. This would not be a finding from the facts that Jenkins intelligently and consciously waived the right. Such a holding would be directly contrary to the philosophy of the cases cited above, which find a waiver only where there is a deliberate act by one cognizant of the existence of the right he is surrendering, and who freely and understandingly surrenders it.
We therefore conclude that Jenkins did not waive his right to have counsel with him at the time of his sentence.
We have considered the remaining points raised by assigned counsel and which implicate the validity of the guilty pleas. They are without merit. The pleas were understandingly and voluntarily made after consultation with an attorney, and were properly accepted by the trial judge.
Accordingly, the sentences imposed by the County Court will be vacated and the matter remanded to that court for resentencing after the prisoner has been assigned counsel, consulted with him, and had the benefit of his presence and argument before the sentencing judge in mitigation of punishment. In the meantime Jenkins is to remain in custody.
HANEMAN, J.A.D. (dissenting).
Plaintiff, Jenkins, appeals from an order of the Essex County Court denying the issuance of a writ of habeas corpus on his petition.
*128 Jenkins was arrested on April 13, 1955 on charges of armed robbery, automobile theft and carrying a concealed weapon. On April 18, 1955 he appeared before the Municipal Court of the City of Newark. He executed a written waiver of his right to indictment and trial by jury. On May 2, 1955 he was arraigned before the Essex County Court on 11 accusations against him. In six of these accusations he alone was charged with armed robbery; in three he and one Young were jointly charged with armed robbery; in the two remaining he was charged with larceny of an automobile and with carrying a concealed weapon. The first incident covered by these accusations occurred on February 13, 1955; the last on April 13, 1955, the date on which he was apprehended.
Jenkins' arraignment before the County Court was properly conducted in open court. At the arraignment he was questioned as follows:
"COURT CRIER MICHAEL J. DOYLE: Do you have a lawyer, Mr. Jenkins?
MR. JENKINS: No, sir.
MR. DOYLE: Are you financially able to employ one?
MR. JENKINS: No.
MR. DOYLE: Do you wish the court to assign a lawyer before you plead?
MR. JENKINS: No."
The trial judge asked Jenkins what plea he intended to enter and he responded "Guilty." The court asked Felix Rospond, Esq., a respected member of the New Jersey Bar, then present in the courtroom, if he was willing to consult with Jenkins. Mr. Rospond indicated that he was willing and the court then spoke to the co-defendant Young in Jenkins' presence:
"THE COURT: Is Mr. Young here? Do you have a lawyer, Mr. Young?
MR. YOUNG: No, sir.
THE COURT: Do you desire that the court appoint a lawyer to consult with you?
MR. YOUNG: I plead guilty, but I will talk to him."
*129 After consulting with both defendants, all returned to the courtroom and presented themselves before the court. Mr. Rospond represented to the court that he had reviewed with Jenkins the 11 accusations against him, and advised the court, on Jenkins' behalf, that Jenkins understood precisely what his constitutional rights were, and that he desired, notwithstanding the fact that Rospond had explained to him the nature of the waiver of indictment and trial by jury, to proceed without a jury. This information was elicited in the following colloquy between the court and Mr. Rospond:
"MR. ROSPOND: I have been over all eleven accusations. He understands precisely what his constitutional rights are and he desires, notwithstanding that I have explained to him fully, he desires to plead guilty to the 
THE COURT: Did you take up with him the signature on the waiver?
MR. ROSPOND: Yes.
THE COURT: And explain to him that he has waived a trial by jury?
MR. ROSPOND: Yes.
THE COURT: He has expressed his understanding of that?
MR. ROSPOND: He has expressed his understanding of that and his willingness to proceed without a jury. He understands it, and he wishes to waive the reading of the accusations again."
Following this, counsel for the State questioned Jenkins in open court:
"MR. JUNG: Benny Jenkins, as to these accusations, I understand as to each and every one of them you wish to plead guilty, is that right?
MR. JENKINS: Yes.
MR. JUNG: And those accusations you have read and have had read to you, is that right?
MR. JENKINS: Yes.
MR. JUNG: Do you understand, by entering a plea of guilty, you are admitting the truth of everything in those accusations?
MR. JENKINS: Yes.
MR. JUNG: That means you did what the accusations say you did?
MR. JENKINS: Yes.
*130 MR. JUNG: And you intend that the Court, in imposing sentence, shall consider you guilty?
MR. JENKINS: Yes."
The court accepted Jenkins' plea of guilty and set May 11, 1955 as the date for sentencing.
On sentencing day Jenkins was brought before another judge of the County Court. The sentencing court reviewed with him the substance of each accusation and his plea in the following manner, which is illustrative:
"THE COURT: Jenkins, you pleaded guilty to Accusation 55544 which charges you with armed robbery upon one Olshin. Is that correct?
DEFENDANT JENKINS: Yes."
After reviewing each of the 11 accusations in the foregoing manner the court questioned Jenkins as follows:
"THE COURT: And you are guilty of these charges. Is that correct?
DEFENDANT JENKINS: Yes.
THE COURT: At the time you entered your plea to each of these Accusations you consulted a lawyer in court before you entered your plea. Is that right?
DEFENDANT JENKINS: Yes.
THE COURT: Is there anything you want to say before I impose sentence upon you?
DEFENDANT JENKINS: No.
THE COURT: You have no previous record?
DEFENDANT JENKINS: No."
Thereupon the court imposed sentence on each of four accusations, the total equalling a term of imprisonment for not less than 18 years nor more than 35 years. Sentence on seven accusations was suspended. The imposition of sentence moved the court to make the following remarks:
"It does not come easy to a judge to sentence a youngster eighteen years old to a term of eighteen to thirty-five years. Although the age of defendant is to be taken into consideration in certain circumstances, when we deal with a series of offenses as serious and *131 as numerous as yours the only break that a judge can give you is not to give you the maximum on each.
On each of these offenses I could have added up a total of at least twice, almost three times, what I gave you. When I only give you eighteen to thirty-five years I give you the benefit of every break. There is no justification for what you did. And I find absolutely nothing in what you did and the way you did it which bespeaks anything less than the sentence I gave you."
In November 1957, some 2 1/2 years later, Jenkins filed a petition seeking thereby the issuance of a writ of habeas corpus. He assigned the following grounds as the bases for the allegation that he was illegally confined: (1) he could not have waived indictment intelligently because he did not have the benefit of counsel and because of his youth and lack of experience with the law; (2) he pleaded guilty because an officer of the robbery squad (he did not know him by name but he could identify him in a "line-up") promised that he would receive a five-year indefinite term to Annandale Reformatory if he would admit the crimes and enter a plea to them; (3) a confession was coerced from him through the promises and brutality of officers of the robbery squad (he could identify them in a "line-up"); (4) he was held incommunicado until he actually confessed; (5) he was not afforded a right to counsel and lacked a clear understanding of the legal effect of a plea of guilty; (6) the sentence imposed amounted to a cruel and unusual punishment, considering his age, lack of counsel and the fact that he had no prior record.
Jenkins was assigned counsel to represent him on this application. Counsel requested and obtained leave of the court to have Jenkins examined at the State Hospital for the Criminal Insane at Trenton. This examination of Jenkins, conducted by the staff of the State Hospital, included neurological and psychological examinations; an electroencephalographic study and a psychiatric evaluation. In addition, through the efforts of assigned counsel, leave was granted to have Jenkins examined by private physicians of counsel's own choosing. Thereafter, two medical doctors, *132 resident in psychiatry at Yeshiva University, examined Jenkins at the state institution.
The matter of the issuance of the writ of habeas corpus came on to be heard before a third judge of the County Court. The report of the physicians at the State Hospital was introduced in evidence by consent. The formal report of Jenkins' own examiners had not been prepared at the time of hearing and the court refused to permit it to be filed later.
Counsel had requested these examinations, not for the purpose of attacking Jenkins' waiver of his right to counsel, indictment and trial by jury, but for the purpose of eliciting facts concerning his personal background as an aid to the court in appraising the sentence, the theory being that the sentence was not tailored for the man, and the sentence, viewed in the light of these reports, would disclose the prejudice which Jenkins suffered. Counsel thus disavows any concern for Jenkins' mental capacity either to commit crime or to intelligently comprehend and undertake a waiver of his rights to indictment, trial by jury and the assignment of counsel at least for the purpose of arraignment. In fine, Jenkins does not contest the validity of his plea or his waiver of his right to counsel at the arraignment.
The court apparently called upon the State for a formal answer to the petition. State v. Cynkowski, 10 N.J. 571, 576 (1952). The petition for the issuance of a writ of habeas corpus came on to be heard on June 13, 1958. The principal point then urged on behalf of Jenkins was that the lack of counsel at sentencing and the failure of the trial judge again to apprise him of his right to have counsel were prejudicial. The prejudice claimed is that defense counsel at the sentencing may have developed some of the social and personality deficiencies with which Jenkins is afflicted and thus may have secured him a more favorable sentence. The proceeding on June 13, 1958 concerned itself exclusively with the right to counsel issue, although counsel reserved the right to argue the other grounds alleged in *133 the petition. The trial judge limited his consideration to Jenkins' contention that he was entitled to be apprised of his right to counsel on sentencing and that he did not have such counsel. The trial judge denied the issuance of a writ of habeas corpus. From this denial Jenkins appeals, upon the six major points. Four of these points deal with his alleged constitutional right to counsel at the sentencing, including his non-waiver of that right at sentencing. The fifth point deals with the trial court's failure to pass upon the balance of the allegations contained in his petition for a writ of habeas corpus. The sixth point is bottomed upon the trial court's failure to admit the reports of his private physicians.

I.
The first four points will be considered together.
Jenkins does not argue that he was not apprised of his right to counsel at his arraignment and prior to his plea, nor does he dispute that he then intelligently and competently waived representation by counsel. Rather, he argues, admitting that he so intelligently and competently waived that known right at the time of plea, such a waiver, under the facts, should be deemed restricted solely to the plea and should not be considered to carry over to sentence.
It must be conceded that the New Jersey Constitution (1947) provides that "in all criminal prosecutions the accused shall have the right * * * to have the assistance of counsel in his defense." Art. I, par. 10. This provision is identical with the Sixth Amendment of the United States Constitution, which, of course, applies only to federal courts.
One preliminary matter must be disposed of before considering the main argument on this appeal. Jenkins makes no firm point of the matter, but suggests in the brief filed on his behalf that counsel was assigned to him at his arraignment before the County Court. Such was not the case. Mr. *134 Rospond was requested to confer with Jenkins, not for the purpose of defense, but only to afford a further measure of certainty to Jenkins' understanding of his constitutional rights and the effect of his waiver of those rights and his plea. This is borne out by the colloquy which ensued after Mr. Rospond's conference with Jenkins. Furthermore, Jenkins' main argument on this appeal assumes the propriety of his plea and waiver of his rights to counsel at that time. His argument here, which is related solely to the sentencing, is that he was prejudiced because he was not advised of his right to counsel at sentencing and thus was unable to present to the court matters in mitigation of the enormity of his social defalcations. He argues also that he was prejudiced because the sentencing court neglected to inquire specifically if he had anything to present in mitigation of the sentence about to be imposed. This latter point, however, is not urged with conviction because of another strain of the main argument, which is that he was incapable of effectively presenting such matters himself and that, therefore, such a request would merely have satisfied the letter of the rule while doing injustice to the reason and sense for its existence.
One further preliminary point. Aside from the constitutional right to defense counsel, N.J. Const. (1947), Art. I, par. 10, our court rules cover the matter of assignment of counsel with particularity. R.R. 1:12-9. The rule as it stood on the date of Jenkins' plea required assigned counsel to represent his client not only at the trial but in post-sentence proceedings, e.g., application to correct sentence, habeas corpus proceedings and appeals. In other words, the rule contemplated that once counsel was assigned he would serve through each step in the proceedings involving his client. R.R. 1:12-9(b). In 1958 that rule was amended. It now provides that the duties of assigned trial counsel shall terminate after sentencing. The amendment was designed to distribute more fairly the work load in assigned cases among the members of the Bar. In other words, the duties *135 of assigned counsel always encompassed the sentencing procedure. The amendment selects sentencing as the terminal point. The duty of counsel to serve through the sentencing, however, was the same before as now. See State v. Rose, 40 N.J. Super. 40, 52-53 (Cty. Ct. 1956), affirmed on other grounds, 41 N.J. Super. 434 (App. Div. 1956).
It is elementary that a person accused of crime has a constitutional right to counsel in his defense. N.J. Const. (1947), Art. I, par. 10. Basic, also, is the proposition that a defendant is entitled to be represented by counsel at any stage of criminal proceeding against him. Davis v. United States, 226 F.2d 834 (8 Cir. 1955), certiorari denied 351 U.S. 912, 76 S.Ct. 702, 100 L.Ed. 1446 (1956).
Another primary principle is that the accused may refuse the right accorded him by the Constitution by a waiver of that right "* * * made understandingly, intelligently, competently and voluntarily in the exercise of a free choice and with the considered approval of the court." State v. LaSalle, 19 N.J. Super. 510, 514-515 (App. Div. 1952); certiorari denied 344 U.S. 844, 73 S.Ct. 60, 97 L.Ed. 657 (1952).
The essential issue before us is the effect of Jenkins' waiver of counsel at the arraignment. Does that waiver extend through all stages of the particular criminal action unless or until timely and effectively revoked by some act or word of the defendant? Or, is the waiver effective only for the particular step in the proceeding at which it is given?
Jenkins argues that he had a constitutional right to counsel at the sentencing and that the sentencing judge prejudicially denied him that right because the court did not advise him of his right to counsel at that stage in the proceedings. As indicated above, I agree that defendant has a constitutional right to counsel in his defense  which would include counsel at sentencing  provided he has not undertaken a general waiver of his right to counsel. I cannot agree, however, to a fragmented view of the right to counsel which would place a duty on the court, at each stage of *136 the proceedings in a given case, to repeat the initial inquiry he must make of a defendant. The right to defense counsel is but one right. If a defendant undertakes a legally proper waiver, he waives the entire right. If he elects to take advantage of his right, he becomes entitled to all benefits thereunder from then on. The right to counsel is the same no matter when taken advantage of or when waived. An effective waiver of his right extends to all steps in the particular proceeding, unless and until there is an effective and timely withdrawal of the waiver. Davis v. United States, supra. Nor is it necessary in the first instance that the court delineate in extenso the service which assigned counsel would perform for a defendant. He must bring home to the defendant only the understanding that he is entitled to counsel and that the court stands ready to assign counsel in defense if he proves himself financially unable to pay for that service.
The sentencing procedure is separate and distinct from the defense at the trial. Yet it is, unquestionably, one step in the proceedings against the defendant. The courts interpret the Sixth Amendment right to mean counsel in defense at each stage in the proceeding. Thus, in the constitutional sense, the right to counsel, once accepted, includes the right to counsel through the sentencing. See Martin v. United States, 182 F.2d 225, 20 A.L.R.2d 1236 (5 Cir. 1950). But this is not to say that defendant is entitled to be apprised of his right to counsel at each step in the proceedings subsequent to an intelligent and effective waiver of the right.
The issue, then, is resolved to whether Jenkins made an understanding, intelligent and competent waiver, voluntarily, in the exercise of his free choice. I hold that he did. The judge who accepted his plea did so only after he was assured by Jenkins, Mr. Rospond and the State's attorney that he understood "precisely what his constitutional rights are" (as Mr. Rospond put it). The judge who sentenced him did so only after ascertaining his continuing desire to plead guilty to each accusation. There was no deprivation of his *137 constitutional right to the assistance of counsel in his defense. Rather, the trial judges carefully and conscientiously afforded him every opportunity due him in the circumstances.
We have been referred to two New Jersey cases as authority for the proposition that there is no New Jersey constitutional right to counsel at sentencing. The first, State v. Murphy, 87 N.J.L. 515 (E. & A. 1915), held that the word "defense" as used in the Constitution referred to the time when one is put in jeopardy on his trial. The problem in Murphy was related to the right to counsel at arrest. The court, in effect, ruled that jeopardy did not attach at that time and, therefore, the scope of the constitutional right to counsel for defense was not broad enough to encompass the fact situation presented. While the holding is unassailable on the facts, it is not decisive of the issue here presented.
In the second case, State v. Rose, supra, 40 N.J. Super. 40, the court held flatly that there is no constitutional right to counsel at sentencing. That holding must be viewed against the factual background of the case, and when so viewed loses its apparent force. Rose pleaded non vult to each of three indictments. He was represented by counsel at that time and the court found that his pleas were voluntarily and understandingly undertaken. At sentencing his lawyer made a plea for leniency, albeit in the absence of defendant. The court criticized, and rightly so, the practice of hearing the defense attorney's plea at sentencing in the absence of the defendant, and the actual sentencing of defendant in the absence of counsel. The holding was that this defect was not so prejudicial as to warrant Rose's release on a writ of habeas corpus. This court affirmed that determination (41 N.J. Super. 434), recognizing, however, that the court records of the sentencing did not clearly disclose that Rose was not sentenced on each of two repugnant charges and that counsel's absence in the circumstances was prejudicial enough to warrant relief by way of resentencing. The important fact of the Rose case, however, and the one which distinguishes it from the present matter is that Rose never *138 waived his right to counsel, but conversely, intended to avail himself of that right throughout the proceedings against him.
In Zasada v. State, 19 N.J. Super. 589 (App. Div. 1952), Judge Bigelow observed that the comparable provision of our State Constitution should be given the same meaning and force that is attributed to the Sixth Amendment to the United States Constitution. Zasada does not stand for that proposition, yet, absent controlling authority in our State courts, the interpretation, scope and effect which the federal courts have given the Sixth Amendment afford us a guide to the proper interpretation of the identical provision in the New Jersey Constitution as related to the right to the assistance of counsel at the sentencing.
The federal courts have frequently been faced with the right to counsel issue under the Sixth Amendment. The rule in those jurisdictions, as in New Jersey, is that the right to counsel is personal and may be waived, i.e., there must be an "intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Under the Sixth Amendment the right to counsel at sentencing is not absolute. See Martin v. United States, 182 F.2d 225 (5 Cir. 1950). Where there has been an intelligent waiver of the right at an earlier stage in the proceedings and no subsequent timely and effective revocation of that waiver, the constitutional requirement is satisfied and the jurisdiction and judgment of the court cannot be successfully challenged on the ground that defendant was not provided the effective assistance of counsel in his defense. And once defendant has waived his rights there is no need for the court to ascertain on each subsequent step in the *139 proceedings against him that he knew of his rights and was then willing to waive them. Davis v. United States, supra; Stidham v. Swope, 82 F. Supp. 931 (D.C. Cal. 1949).
Once a defendant has availed himself of his right to counsel, and has not subsequently waived the right, he is entitled to be effectively represented by counsel at all stages of the proceedings, including the sentencing procedure. See, e.g., Gadsden v. United States, 96 U.S. App. D.C. 162, 223 F.2d 627 (D.C. Cir. 1955); McKinney v. United States, 93 U.S. App. D.C. 222, 208 F.2d 844 (D.C. Cir. 1953); Walton v. United States, 92 U.S. App. D.C. 26, 202 F.2d 18 (D.C. Cir. 1953); Martin v. United States, 182 F.2d 225 (5 Cir. 1950); Wilfong v. Johnston, 156 F.2d 507 (9 Cir. 1946), and Willis v. Hunter, 166 F.2d 721 (10 Cir. 1948), where counsel did not appear personally but submitted a memorandum of the matters which he would have presented on the sentencing day and it was held, in the circumstances, that defendant was effectively represented by counsel.
Where there has been no competent waiver of the right the defendant is entitled to relief, see, e.g., United States ex rel. Nortner v. Hiatt, 33 F. Supp. 545 (D.C.M.D. Pa. 1940), but relief should be denied where there has been an effective waiver, see, e.g., Caldwell v. Hunter, 163 F.2d 181 (10 Cir. 1947).
In Martin v. United States, supra [182 F.2d 227], the court noted that the absence of counsel alone is not reversible error. Whether counsel's absence would be error depends on the "stage of proceedings" at which he was absent. Denial of the right without prejudice is not actionable. It was there held that there was no prejudice because defendant's counsel was not present at the return of the verdict. But it was held that the absence of counsel at sentencing was presumably prejudicial. "The very nature of the proceedings at the time of imposition of sentence makes the presence of defendant's counsel at that time necessary if the constitutional requirement is to be met." This latter holding must, *140 of course, be viewed against the factual background that the defendant there was represented by counsel and never waived his right to legal assistance.
While I hold that Jenkins effectively waived his right to counsel and that that waiver precludes relief on the grounds of lack of counsel, there is, additionally, a serious question whether he suffered any prejudice from the fact that he was not represented. The minimum-maximum term imposed was within the penalty fixed by statute. However, the maximum of the sentence which the court could have imposed under the statute for nine robberies was 135 years, plus an additional ten years for larceny and the carrying of a concealed weapon. If the court had added the penalties for armed criminals, N.J.S. 2A:151-5, that maximum could have been extended to 295 years or to a combination of years, plus life sentences.
The record discloses clearly that the sentencing judge was moved by the decision which his judicial duty cast upon him. The sentence imposed, now characterized as cruel and unusual punishment, when viewed against the sentence which the court might properly have imposed, does not raise, on its face, any prejudice. Jenkins pleaded guilty in nine distinct instances to armed robbery of individuals. Sentence was suspended in five cases. The sentences imposed were in each case less than the maximum, e.g., in three cases the sentence was a minimum-maximum term of 5-10 years, and in one a minimum-maximum term of 3-5 years, each consecutive. The maximum in each case is a 15-year term, N.J.S. 2A:141.1, where added penalties are not concerned, N.J.S. 2A:85-8, 9; 2A:151-5. On the larceny and weapon charges sentence was suspended. The court considered Jenkins' age and his prior clear slate when he imposed the sentence.
The decision on the main issue renders moot the issue relating to the trial court's refusal to admit the reports of Jenkins' physicians. No prejudice resulted therefrom. Those reports would, presumably, have demonstrated to the court the prejudice which Jenkins suffered by not having had the *141 assistance of counsel at sentencing, a position in which he voluntarily and understandingly placed himself.
The remaining issue concerns the failure of the trial court to rule on the other grounds asserted in Jenkins' petition for a writ.
The record before the court is sufficient to permit a decision on the merits of the other allegations which were not passed on in the trial court.
What has been said above is dispositive of the allegations in Jenkins' petition concerning the non-waiver of his right to indictment, his understanding of the legel effect of his plea and the quantum of the sentence imposed.
As to the allegation of brutality leading to his confession, I need only note that the confession played no part in the finding of his guilt. Guilt was established on the basis of his plea and not the confession. See State v. Cynkowski, supra.
The failure to arraign Jenkins immediately will not impair a conviction which is otherwise valid. Jenkins alleged he was held incommunicado for ten days. The record discloses that he appeared in municipal court on the fifth day following his apprehension. In any event, I discern from the record no prejudice from this fact which would impair his conviction on his plea of guilty. Id.
As to the point concerning promises of leniency made by the police, such promises are not binding on the court and will not, save in unusual circumstances, invalidate a conviction or sentence thereon which is otherwise valid. State v. Miller, 16 N.J. Super. 251 (App. Div. 1951); In re Sabongy, 18 N.J. Super. 334 (Cty. Ct. 1952).
Affirm.